UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

------------------------------------------------------------ x

DON RUPPEL, individually and on behalf of all
others similarly situated,

                             Plaintiff,

                - against -

CONSUMERS UNION OF UNITED STATES,
INC.,

                        Defendant.

------------------------------------------------------------ x

:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No.: 16-cv-2444 (KMK)

ECF Case

Electronically filed

**ORAL ARGUMENT REQUESTED**

<br>

### MEMORANDUM OF LAW OF DEFENDANT CONSUMERS UNION OF UNITED STATES, INC. IN SUPPORT OF ITS MOTION TO DISMISS

<br><br>

Sharon L. Schneier
1251 Avenue of the Americas, 21st Floor
New York, New York 10020-1104
(212) 489-8230 Phone
(212) 489-8340 Fax
sharonschneier@dwt.com

Sean M. Sullivan (admitted *pro hac vice*)
865 S. Figueroa St., Suite 2400
Los Angeles, California 90017-2566
(213) 633-8644 Phone
(213) 633-6899 Fax
seansullivan@dwt.com

*Attorneys for Defendant*
*Consumers Union Of United States, Inc.*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 3

    A.    The Michigan VRPA ........................................................................................ 3

    B.    The Michigan Legislature's Curative and Clarifying Amendments to the VRPA ............................................................................................................... 4

    C.    Plaintiff's Lawsuit ............................................................................................. 5

    D.    Consumers Union the Publisher of Consumer Reports ..................................... 6

ARGUMENT ...................................................................................................................... 7

    POINT I      PLAINTIFF LACKS STANDING BECAUSE THE COMPLAINT IS DEVOID OF ANY ALLEGATION OF INJURY FROM THE ALLEGED DISCLOSURE ...................................................... 7

          A.    The Amendments to the VRPA Make Clear That Plaintiff Lacks Standing Because He Has Not Alleged Actual Injury or Damages ........................................................................................ 8

              1.    The Amendments to the Statute Apply Retroactively ........ 8

              2.    The Actual Damages Requirement Is Remedial and Does Not Impact a Vested Right ...................................... 12

          B.    *Spokeo* Held That Article III Standing Cannot Be Established Solely Based on an Alleged Statutory Violation ......................... 13

    POINT II     PLAINTIFF'S CLAIM FAILS BECAUSE CONSUMERS UNION PROVIDES NOTICE AND THE OPPORTUNITY TO OPT-OUT TO ITS ONLINE AND PRINT SUBSCRIBERS .................................... 18

    POINT III    THE VRPA CANNOT WITHSTAND THE HEIGHTENED SCRUTINY REQUIRED BY THE FIRST AMENDMENT .................. 21

    POINT IV    PLAINTIFF'S UNJUST ENRICHMENT CLAIM IS PREEMPTED BY THE VRPA AND FAILS AS A MATTER OF LAW ...................... 24

CONCLUSION .................................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*American Psychiatric Assn. v. Anthem Health Plans, Inc.*,
   821 F.3d 352 (2d Cir. 2016)...................................................................................7

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
   671 F.3d 140 (2d Cir. 2011)...................................................................................7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................................7, 18

*Bd. of Trustees of State Univ. of New York v. Fox*,
   492 U.S. 469 (1989)...................................................................................22, 23

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...................................................................................7

*Boelter v. Hearst Commc'ns, Inc.*
   2016 WL 3369541, at *4 (S.D.N.Y. June 17, 2016)...................................10, 12, 21

*Bolger v. Young Drug Prods. Corp.*,
   463 U.S. 60 (1983)...................................................................................22, 23

*Bonilla v. Lafler*,
   No. 06–15466, 2009 WL 2386080
   (E.D. Mich. July 30, 2009) ...................................................................................8

*Bose v. Interclick, Inc.*,
   No. 10 Civ. 9183 (DAB), 2011 WL 4343517
   (S.D.N.Y. Aug. 17, 2011)...................................................................................16

*Brown v. Entm't Merchs. Ass'n*,
   564 U.S. 786 (2011)...................................................................................24

*Cain v. Redbox Automated Retail, LLC*,
   981 F. Supp. 2d 674 (E.D. Mich. 2013)...................................................................11

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,
   447 U.S. 557 (1980)...................................................................................23

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
   508 U.S. 520 (1993)...................................................................................14

*City of Cincinnati v. Discovery Network, Inc.*,
   507 U.S. 410 (1993)...................................................................................23

DWT 30183611v1 0093526-000011

*Clapper v. Amnesty Int'l, USA*,
    133 S. Ct. 1138 (2013) ..............................................................................16

*Clarex Ltd. v. Natixis Sec. Am. LLC*,
    No. 12 Civ. 0722(PAE), 2012 WL 4849146
    (S.D.N.Y. Oct. 12, 2012) .............................................................................7

*Commodity Futures Trading Comm'n v. Vartuli*,
    228 F.3d 94 (2d Cir. 2000).........................................................................22

*Coulter-Owens v. Time, Inc.*,
    No. 12-CV-14390, 2016 WL 612690
    (E.D. Mich. Feb. 16, 2016) ........................................................................11

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,
    472 U.S. 749 (1985)...................................................................................22

*Greater New Orleans Broad. Ass'n, Inc. v. U.S.*,
    527 U.S. 173 (1999)............................................................................15, 23

*Gubala v. Time Warner Cable Inc.*,
    No. 15-cv-1078-pp, 2016 WL 3390415 (E.D. Wis. June 17, 2016) ...........17

*Halaburda v. Bauer Pub. Co., LP*,
    No. 12-CV-12831, 2013 WL 4012827 (E.D. Mich. Aug. 6, 2013) ............11

*Hancock v. Urban Outfitters, Inc.*,
    No. 14-7047, 2016 WL 3996710 (D.C. Cir. July 26, 2016) ...............17, 18

*Harris v. Quinn*,
    134 S. Ct. 2618 (2014)...............................................................................22

*In the Matter of the Trusteeships Created by Tropic CDO I Ltd.*,
    92 F. Supp. 3d 163 (S.D.N.Y. 2015).........................................................19

*In re DoubleClick Inc. Privacy Litig.*,
    154 F. Supp. 2d 497 (S.D.N.Y. 2001)........................................................16

*In re Jetblue Airways Corp. Privacy Litig.*,
    379 F. Supp. 2d 299 (E.D.N.Y. 2005) .......................................................16

*In re MBIA, Inc., Securities Litig.*,
    700 F. Supp. 2d 566 (S.D.N.Y. 2010) (Karas, J.) .....................................19

*In re Oswalt*,
    318 B.R. 817 (W.D. Mich. 2004) ..............................................................10

DWT 30183611v1 0093526-000011

*In re Oswalt*,
   444 F.3d 524 (6th Cir. 2006) ........................................................................2, 9, 11

*In re Whole Foods Market Grp., Inc. Overcharging Litig.*,
   15 Civ. 5838(PAE), 2016 WL 852796 (S.D.N.Y. Mar. 1, 2016) .............................7

*Khan v. Children's Nat'l Health Sys.*,
   No. TDC-15-2125, 2016 WL 2946165 (D. Md. May 19, 2016) ............................17

*Kinder v. Meredith Corp.*,
   No. 14–cv–11284, 2014 WL 4209575 (E.D. Mich. Aug. 26, 2014) .....................11

*L-7 Designs, Inc. v. Old Navy, LLC*,
   647 F.3d 419 (2d Cir. 2011)...................................................................................19

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   134 S.Ct. 1377 (2014) ..............................................................................................7

*Lujan v. Def. of Wildlife*,
   504 U.S. 555 (1992)................................................................................................15

*Mangini v. R.J. Reynolds Tobacco Co.*,
   793 F. Supp. 925 (N.D. Cal. 1992) ........................................................................15

*Pacheco v. Boar's Head Provisions Co.*,
   No. 1:09-CV-298, 2010 WL 1323785 (W.D. Mich. Mar. 30, 2010).....................24

*Pleasant Grove City v. Summum*,
   555 U.S. 460 (2009)................................................................................................14

*Reed v. Town of Gilbert, Ariz.*,
   135 S. Ct. 2218 (2015)............................................................................................21

*Retail Digital Network, LLC v. Appelsmith*,
   810 F.3d 638 (9th Cir. 2016) .................................................................................23

*Robainas v. Metropolitan Life Ins. Co.*,
   1:14-cv-09926-DLC, 2015 WL 5918200 (S.D.N.Y. Oct. 9, 2015) ........................15

*Ross v. AXA Equitable Life Ins. Co.*,
   115 F. Supp. 3d 424, 434 (S.D.N.Y. 2015).............................................................15

*Ross v. Bank of Am., N.A.*,
   524 F.3d 217 (2d Cir. 2008)..............................................................................13, 15

*Sartin v. EKF Diagnostics, Inc.*,
   No. 16-1816, 2016 WL 3598297 (E.D. La. July 5, 2016) ......................................17

iv

*Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010) ................................................................................4

*Sira v. Morton*,
  380 F.3d 57 (2d Cir. 2004) ......................................................................19

*Smith v. Ohio State Univ.*,
  No. 2:15-CV-3030, 2016 WL 3182675 (S.D. Ohio June 8, 2016) ...........17

*Sorrell v. IMS Health*,
  131 S. Ct. 2653 (2011) ............................................................................23

*Sorrell v. IMS Health*,
  564 U.S. 552 (2011) ...........................................................................22, 23

*Spokeo, Inc. v. Robins*
  136 S. Ct. 1540 (2016) ..............................................................................2

*Steel Co. v. Citizens for Better Env't*,
  523 U.S. 83 (1998) ............................................................................13, 14

*Thompson v. W. States Med. Ctr.*,
  535 U.S. 357 (2002) ................................................................................23

*U.S. v. Caronia*,
  703 F.3d 149 (2d Cir. 2012) ...............................................................21, 23

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*,
  425 U.S. 748 (1976) ................................................................................22

*Wilson v. Kellogg Co.*,
  111 F. Supp. 3d 306 (E.D.N.Y. 2015) ....................................................19

**State Cases**

*Allstate Ins. Co. v. Faulhaber*,
  157 Mich. App. 164 (1987) ....................................................................2, 9

*City of Detroit v. Walker*,
  445 Mich. 682 (1994) ..............................................................................13

*Detroit Edison Co. v. State*,
  320 Mich. 506 (1948) ..............................................................................11

*Doe v. Dep't of Corrections*
  249 Mich. App. 49 (2001) .......................................................................10

*Duffy v. Grange Ins. Co. of Michigan*,
  No. 290198, 2010 WL 3655979 (Mich. Ct. App. Sept. 21, 2010) .............9

v

*Frank W. Lynch & Co. v. Flex Technologies, Inc.*,
  463 Mich. 578 (2001) ...........................................................................9

*In re Certified Questions from U.S. Ct. of Appeals for the Sixth Cir.*,
  416 Mich. 558 (1982) ........................................................................9, 13

*Jackson v. PKM Corp.*,
  430 Mich. 262 (1988) ...........................................................................24

*Kelly Servs., Inc. v. Treas. Dept.*,
  296 Mich. App. 306 (2012) ...................................................................10

*Kraft v. Detroit Ent'mnt, L.L.C.*,
  261 Mich. App. 534 (2004) ...................................................................24

*LaFontaine Saline, Inc. v. Chrysler Group, LLC*,
  496 Mich. 26 (2014) ...............................................................................9

*Lahti v. Fosterling*,
  357 Mich. 578 (1959) .............................................................................13

*People v. Jackson*,
  465 Mich. 390 (2001) .............................................................................12

*People v. Peltola*,
  489 Mich. 174 (2011) .............................................................................11

*People v. Sheeks*,
  244 Mich. App. 584 (2001) .............................................................2, 9, 10

*Petition of Detroit Edison Co.*,
  350 Mich. 606 (1957) ...............................................................................9

*Prod. Credit Ass'n of Lansing v. Dep't of Treas.*,
  404 Mich. 301 (1978) .............................................................................10

*Romein v. Gen. Motors Corp.*,
  168 Mich. App. 444 (1988), aff'd, 436 Mich. 515 (1990)........................9

*Rookledge v. Garwood*,
  340 Mich. 444 (1954) .............................................................................12

*Seaton v. Wayne County Prosecutor*,
  233 Mich. App. 313 (1998) ............................................................9, 10, 12

**Federal Statutes**

18 U.S.C. § 2710.........................................................................................3

**State Statutes**

M.C.L. § 445.1711..................................................................................................1, 3

M.C.L. § 445.1712..........................................................................................................3

M.C.L. § 445.1713(d)......................................................................................4, 18, 19, 21

M.C.L. § 445.1713(e)......................................................................................................2

M.C.L. § 445.1715..........................................................................................................4

**Rules**

Fed. R. Civ. P. 12(b)(1).........................................................................................1, 7, 25

Fed. R. Civ. P. 12(b)(6).........................................................................................1, 8, 25

Fed. R. Civ. P. 23..........................................................................................................4

MCR 3.501......................................................................................................................4

MCR 3.501(A)(5).............................................................................................................4

DWT 30183611v1 0093526-000011

Defendant Consumers Union of United States, Inc. ("Consumers Union"), by its attorneys Davis Wright Tremaine LLP, respectfully submits this Memorandum of Law in support of its Motion to Dismiss Plaintiff's Class Action Complaint (the "Complaint") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This action is another of a series of copycat cases alleging violation of a Michigan statute that sat virtually ignored for almost twenty-five years.  Although the Video Rental Privacy Act, M.C.L. § 445.1711, et seq. (the "VRPA" or the "Act") was originally passed by the Michigan Legislature in 1988 it was never the subject of litigation until approximately four years ago. Plaintiff has now targeted Consumers Union, the publisher of *Consumer Reports* magazine. Unlike the publisher defendants in the other suits, Consumers Union, founded in 1936, is a nonprofit organization that has no owners, no shareholders and no commercial investors. Significantly, Consumers Union provides the type of disclosures and notices to its on-line and print subscribers that Plaintiff maintains is required by the Act.

While Consumers Union is different from other organizations that have been the subject of VRPA claims, the Complaint is replete with the same cookie cutter allegations pled in all other suits brought to date – that his so-called "Personal Reading Information" (*i.e.*, full names, titles of magazines subscribed to, and home addresses) – was disclosed or sold to list brokers and data miners without his consent in violation of the VRPA.  Plaintiff fails to allege that he suffered any injury in fact or "concrete injury" as a result of this claimed statutory violation. Plaintiff's only alleged injuries – "deprivation of value" as a result of expected privacy interests and receipt of "junk" mail and telephone solicitations – have been rejected as a basis for damages by the courts and are too attenuated to support Plaintiff's claims, especially since Consumers Union does not even disclose, sell, or rent email addresses or telephone numbers.  For this reason

1

and others, Plaintiff's claims are deficient as a matter of law.[1]

*First*, Plaintiff lacks standing to assert claims under the VRPA because he fails to allege he suffered actual damages or injury-in-fact as required under the VRPA or Article III of the U.S. Constitution.  In the face of these "no injury" lawsuits the Michigan Legislature purposely amended the statute to make clear that ***only*** a customer "who suffers actual damages as a result of a violation of this act may bring a civil action" under the statute.  Because the amendment "explains how the legislature intended the original statute to operate," it "applies retroactively as if it was enacted as part of the original statute."  *In re Oswalt*, 444 F.3d 524, 528 (6th Cir. 2006) (applying Michigan law); *see, e.g., People v. Sheeks*, 244 Mich. App. 584, 590 (2001); *Allstate Ins. Co. v. Faulhaber*, 157 Mich. App. 164, 166-67 (1987).

Further, in *Spokeo, Inc. v. Robins*, the Supreme Court held that a plaintiff must allege "concrete" harm – which the Court described as harm that is "real" and "not abstract" – to establish Article III standing.  136 S. Ct. 1540, 1548 (2016).  Reversing the Ninth Circuit's "statutory violation automatically establishes standing" rule, the Court held that the allegation of a statutory violation does not by itself suffice to meet the "real" harm standard:  "Article III standing requires a concrete injury even in the context of a statutory violation."  *Id*. at 1549. Plaintiff's conclusory allegations of "injury" fall far short of the concrete injury the Supreme Court made clear Article III demands.

*Second*, the VRPA explicitly permits making subscriber lists available for marketing as long as notice and opt-out information is provided.  Consumers Union provides notice and the opportunity to opt-out to its online and print subscribers, expressly falling within the exceptions to the VRPA.  M.C.L. § 445.1713(e).

---

[1] Many of the legal arguments raised below are similar to those raised in motions to dismiss in other pending cases, including *Taylor v. Trusted Media Brands, Inc.*, Case No. 7:16-cv-01812-KMK, but Plaintiff's claims here are even more flawed because of Consumers Union's unique practices.

***Third***, and even if standing and jurisdiction could be established, the Complaint must be dismissed because the VRPA regulates speech protected by the First Amendment on the basis of its content, and cannot withstand scrutiny.

***Finally***, Plaintiff's tag-along unjust enrichment claim is preempted by the VRPA, and in any event cannot be sustained on the facts alleged.

## STATEMENT OF FACTS

### A.     The Michigan VRPA

In 1987, the video rental records of United States Supreme Court nominee Judge Robert Bork were leaked to Washington's City Paper.  S. Rep. No. 100-599, at 5 (1988).  Congress denounced the disclosure of Judge Bork's video rental records and moved quickly to pass legislation prohibiting disclosure of video rental records.  The Video Privacy Protection Act, which became law in November 1988, prohibits "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials" from disclosing "to any person, personally identifiable information concerning any consumer of such provider."  18 U.S.C. § 2710.

Against this backdrop, that same year the Michigan legislature passed its own, far broader version of the federal law, the "Preservation of Personal Privacy Act," more popularly referred to as the "Video Rental Privacy Act" or "VRPA."  M.C.L. § 445.1711 *et seq.*  The VRPA, as originally enacted, provided:

> a person, or an employee or agent of the person, engaged in the business of selling at retail, renting, or lending books or other written materials, sound recordings, or video recordings shall not disclose to any person, other than the customer, a record or information concerning the purchase, lease, rental, or borrowing of those materials by a customer that indicates the identity of the customer.

M.C.L. § 445.1712.

The VRPA included various exceptions, including an express exception that permitted

disclosures "for the exclusive purpose of marketing goods and services," if "written notice that the customer may remove his or her name at any time" is provided to the customer by the disclosing party. M.C.L. § 445.1713(d). In 1989, the VRPA was amended to add a civil remedy provision permitting individual "customers" who were damaged to bring an action for the greater of actual or $5,000 in statutory damages. M.C.L. § 445.1715; Pub. Acts No. 206, § 5, 1989 Mich. Legis. Serv. 206.[2]

For almost twenty-five years, the VRPA sat virtually ignored. That changed in 2012, when a plaintiffs' firm started filing a series of purported class actions against magazine publishers in the Eastern District of Michigan. The spate of class action suits in the Eastern District of Michigan, and then a second, more recent wave of cases in the Southern District of New York, expanded the intended reach of the VRPA, which generated a response by the Michigan legislature.

**B.     The Michigan Legislature's Curative and Clarifying Amendments to the VRPA**

On April 18, 2016 the Michigan legislature presented, and on May 2, 2016 Governor Snyder signed, an Act amending the VRPA, entitled PA 92 (the "Amendment"). *See* Declaration of Sean M. Sullivan ("Sullivan Decl.") ¶ 2, Ex. 1 (attaching copy of Amendment). The clarifications provided by the Amendment are extensive. *See* Sullivan Decl. ¶ 3, Ex. 2.

Among other things, Section 5 of the VRPA was amended to remove the availability of

---

[2] Four years earlier, Michigan overhauled its class action provisions in Court Rule 3.501, clarifying that "[a]n action for a penalty or minimum amount of recovery without regard to actual damages imposed or authorized by statute *may not be maintained as a class action unless the statute specifically authorizes its recovery in a class action.*" MCR 3.501(A)(5) (emphasis added). In enacting the VRPA and adding its civil damages remedy, the Michigan legislature did *not* authorize recovery of statutory damages in a class action. *See* M.C.L. § 445.1715. Application of Fed. R. Civ. P. 23 would impermissibly provide plaintiff with a substantive right or remedy precluded by state law. *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 459 (2010) (Ginsberg, J. dissenting). For that reason, the Court should also dismiss Plaintiff's Complaint because he improperly asserts jurisdiction under CAFA when he would be barred as a matter of state substantive law from bringing his state VRPA claims on a class basis in Michigan state court.

statutory damages, and make clear that **only** a customer "who suffers actual damages as a result

of a violation of this act may bring a civil action" under the statute.  In enacting the Amendment,

the legislature expressly declared its intent:

> This amendatory act is *curative and intended to clarify* that the prohibitions on
> disclosing information contained in 1988 PA 378, MCL 445.1711 to 445.1715, do
> not prohibit disclosing information if it is incident to the ordinary course of
> business of the person disclosing the information, including marketing goods and
> services to customers or potential customers when written notice is provided, and
> *that a civil action for a violation of those prohibitions may only be brought by a*
> *customer who has suffered actual damages as a result of the violation.*

*See* Sullivan Decl. ¶¶ 2 and 3, Exs. 1 and 2, Enacting Provisions, § 2 (emphasis added).

Immediately below this language, the Amendment explicitly provides that it was "ordered to take

immediate effect."  In contrast, amendments to another section of the VRPA, Section 3(d),

provide that statutory exceptions for disclosures made in the ordinary course of business "only

appl[y] to a record or information that is created or obtained *after the effective date of the*

*amendatory act that added this subdivision.*" *See id.* (emphasis added).

### C.      Plaintiff's Lawsuit

Plaintiff alleges that he is a subscriber to *Consumer Reports* magazine, which is

published by Consumers Union.  Compl. ¶ 10.  He alleges that Consumers Union violated the

VRPA by disclosing, without consent or prior notice (*see* Compl. ¶ 16), his "Personal Reading

Information" (*i.e.*, full names, titles of magazines subscribed to, and home address) to data

mining companies and selling mailing lists containing Plaintiff's Personal Reading Information

to third parties seeking to contact Consumers Union subscribers.  *Id.* ¶¶ 7, 10.  Plaintiff alleges

that because of Consumers Union's actions, he now receives junk mail and telephone

solicitations offering discounted magazine subscriptions, which waste his time, money and

resources, and that he has been deprived of the full set of benefits to which he was entitled, and

received a less valuable subscription than he paid for.  *Id.* ¶ 10.

DWT 30183611v1 0093526-000011

**D.      Consumers Union the Publisher of Consumer Reports**

Consumers Union, founded in 1936, is a nonprofit organization that has no owners, no shareholders and no commercial investors. *See* Consumer Reports website, at http://www.consumerreports.org/cro/about-us/index.htm; *see also* Compl. Exs. B-D.  It is unique in that it does not accept advertising and pays for all of the products it tests. *See id.*  Instead, Consumers Union is supported primarily by subscription revenues, small donations from individual consumers, cy pres awards, and a handful of larger grants from foundations and state attorneys general. *See id.*  Consumers Union works closely with federal and state regulators, and its work in areas such as auto safety, seeking recalls of dangerous products, and in leveling the playing field in the areas of consumer finance and healthcare, are performed exclusively in the interest of consumers. *See id.*  Consumers Union voluntarily ceased including Michigan residents on mailing lists marketed on its behalf by third parties two years ago.

In addition to other restrictions on its list rental practices, Consumers Union carefully screens the entities that can rent their list (and what kind of entities they can be). *See* Compl. Exs. B and C ("Preclearance is required for all first time uses.  Please allow up to 3 weeks for approval."); *see also* Sullivan Decl. ¶ 5, Ex. 4 (Consumer Reports Privacy Policy, Section 4, found at http://www.consumerreports.org/cro/customerservice/privacy-policy/index.htm).  In addition, while Plaintiff generally alleges he has received telephone solicitations, he does not allege (because he cannot) that Consumers Union disclosed his telephone number.  Compl. ¶¶ 1, 10, 75.

Consumers Union's website, at www.consumerreports.org, contains multiple notices providing notice and opt-out instructions and information.  For example, Consumers Union discloses in its privacy policy the various ways in which it may disclose data and options for opting out of such disclosures.  Sullivan Decl. ¶ 5, Ex. 4 (Sections 4 and 5).  Similarly, every

6

issue of *Consumer Reports* provides a notice of the policy.  *See* Sullivan Decl. ¶ 4, Ex. 3.

## ARGUMENT

### POINT I
### PLAINTIFF LACKS STANDING BECAUSE THE COMPLAINT IS DEVOID
### OF ANY ALLEGATION OF INJURY FROM THE ALLEGED DISCLOSURE

When Article III standing is challenged on a Rule 12(b)(1) motion, the plaintiff bears the

affirmative burden of proving, by a preponderance of evidence, that jurisdiction exists.  *Clarex*

*Ltd. v. Natixis Sec. Am. LLC*, No. 12 Civ. 0722(PAE), 2012 WL 4849146, at \*2-3 (S.D.N.Y. Oct.

12, 2012).  "[T]hat showing is not made by drawing from the pleadings inferences favorable to

the party asserting it … a plaintiff cannot rely solely on conclusory allegations of injury or ask

the court to draw unwarranted inferences in order to find standing. . . ."  *In re Whole Foods*

*Market Grp., Inc. Overcharging Litig.*, 15 Civ. 5838(PAE), 2016 WL 852796, at \*6 (S.D.N.Y.

Mar. 1, 2016) (citations, internal quotations omitted).  "The requirement that the alleged harm be

'concrete' means that the Court 'need not credit [a complaint's] conclusory statements without

reference to its factual context.'"  *Id.* (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671

F.3d 140, 146 (2d Cir. 2011)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

*v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  A claim is plausible only if the plaintiff pleads "factual content" that "allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*,

556 U.S. at 678.[3]  Here, Plaintiff can establish neither standing under the VRPA or Article III

---

[3] "The Supreme Court has recently clarified…that what has been called 'statutory standing' in fact is not a standing issue, but simply a question of whether the particular plaintiff 'has a cause of action under the statute.'"  *American Psychiatric Assn. v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1387 (2014)).  Thus, whether Plaintiff can state a claim under the amended VRPA (*i.e.* has standing to assert a claim under the VRPA) is analyzed under FRCP 12(b)(6).

standing to bring this action, and the Complaint should be dismissed.

### A.   The Amendments to the VRPA Make Clear That Plaintiff Lacks Standing Because He Has Not Alleged Actual Injury or Damages

The Michigan legislature has made clear it was never its intention to permit actions without a showing of actual injury or damages.  The VRPA, as amended, *expressly* requires actual injury to bring a civil suit under the statute.  Section 5 provides that only a customer, "who suffers actual damages as a result of a violation of this act" may pursue a civil action.  *See* Amendment, § 5(2).  The statute's enacting section likewise states that "a civil action for a violation … may only be brought by a customer who has suffered actual damages as a result of the violation."  Amendment, Enacting Provisions, § 2.  As discussed in Section B below, Plaintiff has not alleged that he suffered actual damages as a result of the alleged disclosures and lacks standing to bring suit under the VRPA.

### 1.   The Amendments to the Statute Apply Retroactively

State law determines whether a Michigan statute should be applied retroactively.  *Bonilla v. Lafler*, No. 06–15466, 2009 WL 2386080, at *21 (E.D. Mich. July 30, 2009).  Michigan courts consider four principles when evaluating whether a statutory amendments is to be applied retroactivity:

> First, we consider whether there is specific language providing for retroactive application.  Second, in some situations, a statute is not regarded as operating retroactively merely because it relates to an antecedent event.  Third, in determining retroactivity, we must keep in mind that retroactive laws impair vested rights acquired under existing laws or create new obligations or duties with respect to transactions or considerations already past.  Finally, a remedial or procedural act not affecting vested rights may be given retroactive effect where the injury or claim is antecedent to the enactment of the statute.

*LaFontaine Saline, Inc. v. Chrysler Group, LLC*, 496 Mich. 26, 38-39 (2014).[4]

---

[4]  Courts place heavy weight on the first element.  *Duffy v. Grange Ins. Co. of Michigan*, No. 290198, 2010 WL 3655979, at *1 (Mich. Ct. App. Sept. 21, 2010).  The second element is inapplicable because "[s]econd rule cases

"In determining whether a statute should be applied retroactively or prospectively only, '[t]he primary and overriding rule is that legislative intent governs.'" *Frank W. Lynch & Co. v. Flex Technologies, Inc.*, 463 Mich. 578, 583 (2001) (citation omitted).  Here, the unambiguous intent of the legislature, as illustrated by the language used in the Amendment, supports the conclusion the Amendment is to be applied retroactively.

**First**, the Amendment expressly states that it is "curative and intended to clarify" the VRPA's civil remedies provision as one requiring actual damages.  Enacting Provisions, § 2.  Under Michigan law, a "statutory enactment denominated as 'curative' . . . has been defined as legislation enacted to cure defects in prior law," and such laws are found to "operate retrospectively." *Romein v. Gen. Motors Corp.*, 168 Mich. App. 444, 455 (1988), aff'd, 436 Mich. 515 (1990); *Seaton*, 233 Mich. App. at 323 ("Courts have consistently upheld the retroactive application of 'curative' legislation").  Similarly, amendments that serve to clarify an existing law apply retroactively. *Allstate Ins. Co.*, 157 Mich. App. at 167 (because "the amendment was intended by the Legislature to clarify [an] ambiguity. . . the Legislature intended for it to apply retroactively to all actions"); *Sheeks*, 244 Mich. App. at 590.  As the Sixth Circuit noted *In re Oswalt*, 444 F.3d at 528, language that operates as "a legislative interpretation of the original act" and "explains how the legislature intended the original statute to operate" is to be "applie[d] retroactively as if it was enacted as part of the original statute." *See also Petition of Detroit Edison Co.*, 350 Mich. 606, 614 (1957) ("amendments . . . adopted for the purpose of making plain what the legislative intent had been all along from the time of the statute's original enactment" apply retroactively).

---

relate to measuring the amount of entitlement provided by a subsequent statute in part by services rendered pursuant to a prior statute." *In re Certified Questions from U.S. Ct. of Appeals for the Sixth Cir.*, 416 Mich. 558, 571 (1982). Courts generally analyze elements three and four together. *See, e.g.*, *Seaton v. Wayne County Prosecutor*, 233 Mich. App. 313, 317-18 (1998).

**Second**, the fact that an amendment does not use the word "retroactive" is hardly dispositive. In *Seaton v. Wayne County Prosecutor*, 233 Mich. App. at 322-23, for example, the court held that an amendment was to be applied retroactively where the statute provided that it was enacted "for the purpose of correcting a perceived flaw or defect" but did not expressly state that it was to be applied retroactively. *In re Oswalt*, 318 B.R. 817, 821-22 (W.D. Mich. 2004), *aff'd*, 444 F.3d 524 (6th Cir. 2006), did the same even though the statute did "not have any language mandating retroactive application." *See also Doe v. Dep 't of Corrections*, 249 Mich. App. 49, 60-61 (2001) (statute reflected retroactive intent though it "[did] not use the word 'retroactive'").[5] The amendment in *People v. Sheeks* similarly did not use the word "retroactive" but was given effect because a clarifying intent appeared in the legislative bill analysis. 244 Mich. App. at 590. Here, the clarifying intent is expressed in the Enacting Provisions of the bill itself. *See also Kelly Servs., Inc. v. Treas. Dept.*, 296 Mich. App. 306, 317 (2012) ("the legislative bill analysis clearly indicates the clarifying nature of the amendment" rejecting "contention that the amendment only took effect prospectively"); *Prod. Credit Ass'n of Lansing v. Dep't of Treas.*, 404 Mich. 301, 318 (1978) ("a reasonable construction of the amendment evidences a legislative intent to clarify the law rather than to change it"; amendment contained no retroactivity or other express language of clarifying intent).

**Third**, the text of the Amendment itself further reflects the fact that the legislature understood and intended its actual damages clarification would operate retroactively. Indeed, where the legislature intended other sections of the amendment to operate prospectively, it explicitly so provided. *See* Amendment, § 3(d) (provision regarding disclosures incident to

---

[5]  The district court in *Boelter v. Hearst Commc'ns, Inc.* ("*Hearst*") wrongfully concluded that in the absence of "additional qualifying language" the phrases "curative" and "intended to clarify" do not indicate that the amendments apply to pre-existing disputes. 2016 WL 3369541, at *4 (S.D.N.Y. June 17, 2016). This conclusion ignores the fact that Michigan courts have applied statutory amendments retroactively notwithstanding the absence of the word "retroactive" as well as the amendment's provision stating that it is to take "immediate effect."

ordinary course of business only applies prospectively to "information that is created or obtained after the effective date of the amendatory act that added this subdivision"). In contrast, Section 5 – which expressly requires actual damages – is not so limited. The presence of language of future application in one section of the law, and its absence in another is further evidence of legislative intent. *See People v. Peltola*, 489 Mich. 174, 185 (2011).

***Fourth***, the Act's context and legislative history confirm the legislature's intent to give retroactive effect to the Act's actual damages provision. Where, as here, an amendment is "enacted soon after controversies arose as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act—a formal change— rebutting the presumption of substantial change." *Detroit Edison Co. v. State*, 320 Mich. 506, 520 (1948); *In re Oswalt*, 444 F.3d at 528. That is exactly what happened here. The VRPA sat untouched for almost twenty-five years. Yet, just a few years after plaintiffs' class action lawyers began to use the VRPA to challenge other publishers' standard practices, the legislature amended it. The amendment was passed in the context of these VRPA lawsuits, in which Michigan federal judges were grappling, *inter alia*, with whether actual damages were required to support standing to sue under the VRPA. *See, e.g.*, *Halaburda v. Bauer Pub. Co., LP*, No. 12-CV-12831, 2013 WL 4012827, at *4-5 (E.D. Mich. Aug. 6, 2013); *Cain v. Redbox Automated Retail, LLC*, 981 F. Supp. 2d 674, 683-84 (E.D. Mich. 2013); *Coulter-Owens v. Time, Inc.*, No. 12-CV-14390, 2016 WL 612690, *3 (E.D. Mich. Feb. 16, 2016); *Kinder v. Meredith Corp.*, No. 14–cv–11284, 2014 WL 4209575, at *2 (E.D. Mich. Aug. 26, 2014). Indeed, the Michigan Legislature was fully aware of the numerous no injury class action lawsuits and even heard testimony both from the plaintiffs' bar and from representatives of the magazine industry that were defending against those suits. *See, e.g.*, Sullivan Decl. ¶ 9, Ex. 8, Testimony of Mary

Holland, V.P. of Gov't Affairs for MPA–Ass'n of Magazine Media, Comm. Cmte., Mich. Senate

(the "lack of clarity on actual damages has been exploited by entrepreneurial class action lawyers

in the magazine lawsuits"); ¶ 10, Ex. 9, Testimony of Ari J. Scharg, Cmte. on Commerce and

Trade, Mich. House of Reps., Feb. 9, 2016, p. 4 (bill responded to "civil actions to enforce"

VRPA).[6]

### 2.   The Actual Damages Requirement Is Remedial and Does Not Impact a Vested Right

The Amendment's clarification that actual damages are required for a plaintiff to avail

himself of civil remedies, is clearly "remedial" and entitled to retroactive application.  Under

Michigan law, "statutes related to remedies or modes of procedure which do not create new or

take away vested rights, but only operate in furtherance of a remedy . . . will, in the absence of

language clearly showing a contrary intention, be held to operate retrospectively and apply to all

actions accrued, pending or future, there being no vested right to keep a statutory procedural law

unchanged and free from amendment."  *Seaton*, 233 Mich. App. at 318 (citations omitted);

accord *People v. Jackson*, 465 Mich. 390 (2001).

The Amendment's stated intention is to "correct[] a perceived flaw or defect," and cure

"mischiefs" inadvertently created by the original statute, and thus "remed[ies] defects therein, or

mischiefs thereof."  *Rookledge v. Garwood*, 340 Mich. 444, 453 (1954).  Moreover, it affects

only "the means employed to enforce a right or redress an injury"—specifically, how a plaintiff

may redress a VRPA right—and does not impair the right itself.  *Seaton*, 233 Mich. App. at 320

(quoting *Rookledge*, 340 Mich. at 453).

---

[6] The court in *Hearst* disregarded this context, stating that Hearst "provide[d] no evidence that the law was passed in response to legal controversy."  2016 WL 3369541, at *5.  This conclusion ignores the fact that the Michigan legislature acted to amend a statute that sat on the books for almost twenty-five years within four years of the first of the suits filed by plaintiffs, and soon after courts began interpreting the VRPA to permit plaintiffs to proceed when they had suffered no injury.  The Amendment was clearly passed in the context of these VRPA lawsuits and to explicitly clarify that plaintiffs who suffered no actual damages could not recover statutory damages.

12

It is "firmly established that there is no vested right in any particular procedure or remedy." *City of Detroit v. Walker*, 445 Mich. 682, 703 (1994) (citation omitted). That is because "a statutory right, though a valuable right, is not a vested right, and the holder thereof may be deprived of it." *Lahti v. Fosterling*, 357 Mich. 578, 589 (1959). Thus, for example, in *In re Certified Questions*, 416 Mich. 558, the Michigan Supreme Court held a state statute establishing comparative negligence in products liability actions applied retroactively even though it was enacted after plaintiff's injury and lawsuit, but prior to judgment. The statute was "not a legal bar" to any cause of action but instead "mitigate[d] damages in products liability actions," and as such did not "take away vested rights." *Id.* at 577-78.

The VRPA Amendment does not abolish Plaintiff's cause of action or impair a vested right. It addresses only the requirements for obtaining a legislatively-created remedy thereunder, which is, by definition, remedial.

### B.    *Spokeo* Held That Article III Standing Cannot Be Established Solely Based on an Alleged Statutory Violation

"Standing is the threshold question in every federal case, determining the power of the court to entertain the suit." *Ross v. Bank of Am., N.A.* (USA), 524 F.3d 217, 222 (2d Cir. 2008). The "first and foremost" of Article III's standing requirements is injury in fact. *Steel Co. v. Citizens for Better Env't,* 523 U.S. 83, 103 (1998). *Spokeo* makes clear that to establish an injury in fact, plaintiffs must allege an injury that is both "concrete and particularized." *Spokeo,* 136 S. Ct. at 1545 (citation omitted).[7]  In *Spokeo*, the Supreme Court explained:

Injury in fact is a constitutional requirement, and it is settled that Congress cannot

---

[7] *Spokeo* is a web-based search engine that retrieves publicly available information about individuals. The plaintiff in *Spokeo* brought a putative class action under the Fair Credit Reporting Act ("FCRA"), alleging that some of the information that Spokeo had disseminated about him was inaccurate. *Spokeo*, 136 S. Ct. at 1544. The Ninth Circuit held that the plaintiff had standing to sue under *Edwards* because the plaintiff's allegation that Spokeo disseminated inaccurate information about him constituted a claim that "Spokeo violated *his* statutory rights (under FCRA), not just the statutory rights of other people," and that nothing more was required. *Id*. at 1546 (quotation marks omitted) (emphasis in original).

> erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing. To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is **concrete and particularized** and actual or imminent, not conjectural or hypothetical.

*Id.* at 1547-48 (emphasis added) (internal citations and quotations omitted).

The Supreme Court explained that the Court of Appeals had erred by focusing exclusively on whether the injury was "particularized" and ignoring the "concreteness" requirement of injury in fact. To satisfy this requirement, the plaintiff must demonstrate that the injury "***actually exist[s]***" and that it is "'real,' and not 'abstract.'" *Id.* at 1548 (emphasis added). "[T]angible injuries – such as physical harm, or the loss of money or property – of course qualify as "concrete." *Id.* at 1549. And, the Supreme Court pointed out, prior decisions of the Court identified particular types of ***intangible*** injuries that are concrete – such as depriving someone of the ability to engage in free speech or the free exercise of religion. *Id.* (citing *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009) (free speech); *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993) (free exercise)).

The Court then went on to explain that an alleged statutory violation that affects the plaintiff, standing alone, is *not* sufficient to qualify as a concrete harm. A plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 136 S. Ct. at 1548-1550. *Spokeo* thus holds that a plaintiff has standing to bring a statutory claim only when the asserted violation encompasses an allegation of concrete harm – either because (1) an element of the cause of action requires proof of such harm, and the plaintiff alleges facts sufficient to establish that element (*see id.* at 1549-50); or (2) the plaintiff separately alleges facts establishing a concrete harm (*see id.* at 1549). Plaintiff satisfies neither of these requirements.

14

That the Michigan legislature enacted the VPRA does not alter the requirement that Plaintiff suffer some actual injury in order to bring suit.[8]  *Spokeo* is clear that while Congress can identify "concrete, *de facto* injuries" not previously recognized, a plaintiff "cannot satisfy the demands of Article III by alleging a bare procedural violation."  *Id.* at 1549-50.  That is not to say that Congressional action is never relevant.  *Spokeo* noted that "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries'" previously inadequate in law.  *Spokeo*, 136 S. Ct. at 1549 (quoting *Lujan v. Def. of Wildlife*, 504 U.S. 555, 578 (1992)).  This means that Congress can give plaintiffs the ability to bring suit for a concrete injury previously not actionable.  It does not mean, however, that every time Congress passes a statute, any violation of it constitutes a concrete injury.  *Spokeo* makes clear the latter is ***not*** the case:

> Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.  Article III standing requires a concrete injury even in the context of a statutory violation.  For that reason, [plaintiff] could not, for example, allege a bare procedural violation divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.

*Spokeo*, 136 S. Ct. at 1549 (emphasis added).

Here, Plaintiff does not "satisfy the requirement of concreteness" and has no "risk of real harm."  *Spokeo*, 136 S. Ct. at 1549.  The essence of Plaintiff's claim is, at most, a procedural violation based on the alleged failure of "notice" regarding disclosures by Consumers Union for marketing purposes.[9]  Beyond those allegations, Plaintiff alleges no concrete harm whatsoever.

---

[8] Certainly a state legislature's authority to confer standing could not be *greater* than Congress's.  *See Ross v. AXA Equitable Life Ins. Co.*, 115 F. Supp. 3d 424, 434 (S.D.N.Y. 2015) (finding no authority to "suggest[] that a state legislature can confer Article III standing upon a plaintiff who suffers no concrete harm merely by authorizing a private right of action based on a bare violation of a state statute.") (citing *Mangini v. R.J. Reynolds Tobacco Co.*, 793 F. Supp. 925, 929 (N.D. Cal. 1992)); *accord Robainas v. Metropolitan Life Ins. Co.*, 1:14-cv-09926-DLC, 2015 WL 5918200, at *6 & n. 7 (S.D.N.Y. Oct. 9, 2015) (Cote, J.) (rejecting standing in no-injury class action involving same statute at issue in *Ross*).

[9] Plaintiff's attempt to allege damages in the form of "deprivation of value" as a result of expected privacy interests created by the existence of the VRPA (Compl. ¶¶ 10, and 72-74) have been rejected in this and other Districts.  *See*

*Id.* at 1550.  Plaintiff's conclusory allegations of "injury" – that as a result of these disclosures he has received junk mail and telephone solicitations that wasted his time – are nothing more than generalized claims of invasion of privacy that are far too abstract and speculative to support standing.  Plaintiff does not even allege that Consumers Union disclosed his telephone number and Consumers Union's list rental practices do not even include the disclosure of telephone numbers.  *See, e.g.*, Sullivan Decl. ¶ 5, Ex. 4 (Consumer Reports Privacy Policy, Section 4).  The "highly attenuated chain of possibilities" and unfounded assumptions, that Consumers Union is responsible for his receiving "junk" mail and telephone solicitations fall far short of the concrete injury Article III demands.  *Clapper v. Amnesty Int'l, USA*, 133 S. Ct. 1138, 1148 (2013).  Indeed, the Court in *Clapper* – which the *Spokeo* Court specifically cited – "decline[d] to abandon [its] usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors," like the unidentified individuals or entities that are sending plaintiff unwanted mail.  *Id*. at 1150.  That reasoning controls and applies with equal force here where Plaintiff has not shown any connection between Consumers Union and the junk mail and telephone solicitations he claims to have received – particularly in view of the fact that two years ago, Consumers Union ceased including Michigan residents on mailing lists marketed on its behalf by third parties and has never shared email or telephone number information.

Numerous post-*Spokeo* decisions have found no standing in similar circumstances.  In *Gubala v. Time Warner Cable Inc.*, No. 15-cv-1078-pp, 2016 WL 3390415 (E.D. Wis. June 17, 2016), for example, the district court likewise found that plaintiff lacked standing

---

*In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 525 (S.D.N.Y. 2001) (holding that although "demographic information is valued highly…the value of its collection has never been considered an economic loss to the subject" and rejecting argument that the "value of this collected information constitutes damage to consumers or unjust enrichment to collectors."); *Bose v. Interclick, Inc.*, No. 10 Civ. 9183 (DAB), 2011 WL 4343517, at **4-6 (S.D.N.Y. Aug. 17, 2011) (plaintiff's "claim that Interclick collected her personal information…does not constitute cognizable loss"); *In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 327 (E.D.N.Y. 2005) ("there is absolutely no support for the proposition that the personal information of an individual passenger had any value for which that passenger could have expected to be compensated").

notwithstanding a legislatively identified interest.  There, the court recognized that through the

Cable Act, Congress "identified and elevated an intangible harm-the risk to subscribers' privacy

created by the fact that cable providers have an 'enormous capacity to collect and store

personally identifiable data about each cable subscriber.'"  *Id.* at *4.  It nonetheless found that

plaintiff lacked standing because there were "no allegations . . . that the plaintiff has suffered a

concrete injury as a result of the defendant's retaining his personally identifiable information."

*Id.  See also*, *e.g.*, *Sartin v. EKF Diagnostics, Inc.*, No. 16-1816, 2016 WL 3598297, at *3 (E.D.

La. July 5, 2016) (plaintiff "fail[ed] to plead facts demonstrating how this statutory violation

caused him concrete harm"); *Smith v. Ohio State Univ.*, No. 2:15-CV-3030, 2016 WL 3182675,

*6-8 (S.D. Ohio June 8, 2016) (plaintiffs "admitted that they did not suffer a concrete

consequential damage" from alleged violation); *Khan v. Children's Nat'l Health Sys.*, No. TDC-

15-2125, 2016 WL 2946165, at *7 (D. Md. May 19, 2016) (plaintiff "failed to connect" statutory

violation "to a concrete harm").

     Similarly, in *Hancock v. Urban Outfitters, Inc.*, No. 14-7047, 2016 WL 3996710, at *2

(D.C. Cir. July 26, 2016), the Court of Appeals for the District of Columbia found plaintiffs

lacked standing where they asserted nothing more than "a bare [procedural] violation" of two

District of Columbia laws.  There, plaintiffs' counsel admitted "the only injury * * * that the

named plaintiffs suffered was they were asked for a zip code when * * * [under] the law they

should not have been."  *Id.* at *2.  "In other words, they assert only a bare violation of the

requirements of D.C. law in the course of their purchases."  *Id.*  Because plaintiffs alleged

nothing more than a "naked assertion that a zip code was requested and recorded without any

concrete consequence…" the Court of Appeals vacated the district court's original judgment on

the merits and remanded with instructions to dismiss the complaint for lack of jurisdiction based

on *Spokeo*, which was decided while the appeal was pending.  *Id.* at **3-4.

Further, while *Spokeo* focuses on the "concreteness" element of injury in fact, the other

requirements of Article III injury in fact—including that the alleged harm be "fairly traceable to

the challenged conduct," and not "conjectural or hypothetical" (*id.* at 1547-48)—are also not met

by Plaintiff's pleading.  Indeed, to the extent Plaintiff's complaint even attempts to reference any

harm, it is conclusory, implausible, and fails as a matter of law.  Certainly, the alleged

"disclosures" here bear no relationship to the harm that the statute at issue was intended to

address, and, contrary to the Supreme Court's guidance in *Spokeo*, do not give rise to "harms"

traditionally recognized by the common law (*see Spokeo*, 136 S.Ct. at 1549); the "harm" Plaintiff

alleges here is not just "difficult to prove or measure" (*id.*), it is non-existent.[10]

### POINT II
### PLAINTIFF'S CLAIM FAILS BECAUSE CONSUMERS UNION PROVIDES NOTICE AND THE OPPORTUNITY TO OPT-OUT TO ITS ONLINE AND PRINT SUBSCRIBERS

The VRPA expressly permits disclosure of information about an individual's purchase of

written materials for the "exclusive purpose of marketing goods and services directly to the

consumer" as long as the person disclosing the information "inform[s] the customer by written

notice that the customer may remove his or her name at any time by written notice to the person

disclosing the information." M.C.L. § 445.1713(d).  As the recent amendments to the VRPA's

"marketing" exemption make clear, a "written notice" sufficient to qualify for the exemption

may be included in the magazine or in an online privacy policy.  *See* Amendment, § 3(e).

Plaintiff has alleged no non-marketing uses of his subscription information, nor has he alleged

---

[10] Judge Torres' decision in *Hearst* largely ignored these points and is inconsistent with what *Spokeo* said and did in remanding.  Judge Torres not only failed to address whether Plaintiff's allegations complied with *Spokeo*'s mandate, but whether those allegations were even plausible and sufficient to show "more than a mere possibility" of injury. *Iqbal*, 556 U.S. at 678.

that he asked that such information not be disclosed.[11]  Plaintiff alleges generally that consumers "can sign up for *Consumer Reports* subscriptions through numerous media outlets, including the Internet, telephone, or traditional mail."  Compl. ¶ 46.  Yet Plaintiff does not allege any details of his alleged subscription, including the date(s) on which he subscribed, except to generally allege that he purchased written materials "directly from Consumers Union…."  *See* Compl. ¶ 59. Plaintiff cannot avoid consideration of relevant documents that would reasonably be expected to be referenced in a complaint by omitting such references.  *See, e.g.*, *Wilson v. Kellogg Co.*, 111 F. Supp. 3d 306, 312 (E.D.N.Y. 2015), *aff'd*, 628 F. App'x 59 (2d Cir. 2016) (plaintiff's "failure to include matters of which as [ ] pleader[ ] [he] had notice and which were integral to [his] claim—and that [he] apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on [a 12(b)(6)] motion'") (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)).  This Court can take judicial notice of the contents of these disclosures (and of the respective magazines) because the contents of the magazines and their subscription websites, and disclosures therein, are "integral to the Complaint."  *See, e.g., In the Matter of the Trusteeships Created by Tropic CDO I Ltd.*, 92 F. Supp. 3d 163, 171 (S.D.N.Y. 2015) (citing *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)).  Judicial notice may be taken of "statements" in widely circulated newspapers and periodicals where, as here, they are presented "only for the fact of their publication."  *In re MBIA, Inc., Securities Litig.*, 700 F. Supp. 2d 566, 576-77 (S.D.N.Y. 2010) (Karas, J.) (citations omitted).

Consumers Union's website, at www.consumerreports.org, contains ***multiple*** notices

---

[11]  Plaintiff asserts, in conclusory fashion, that Consumers Union "does not seek its subscribers' prior written consent to any of these disclosures and its subscribers remain unaware that their Personal Reading Information and other sensitive personal information is being bought and sold on the open market."  Compl. ¶ 45.  While "consent" is an additional ground for why the VRPA does not apply, it is not required for the VRPA's marketing exception to apply—only notice and an opportunity to opt out is required.  *See* M.C.L. § 445.1713(d).  *Consumer Reports* contains just the type of disclosure required by the statute.

DWT 30183611v1 0093526-000011

providing notice and opt-out instructions and information.  For example, Consumers Union

discloses in its privacy policy the various ways in which it may disclose data and options for

opting out of such disclosures.  *See* Sullivan Decl. ¶ 5, Ex. 4 (Consumer Reports Privacy Policy

Sections 4 and 5).  Further, on the FAQ page of the website, the following notice is provided:

> **Marketing Preferences**
>
> We exchange or rent our subscriber list for a one time use with selected publications and nonprofit organizations. If you wish for your name to be deleted from these exchanges, please submit your request to be removed by one of the following methods:
>
> Visit "My account" and click on "Access Account" under "Manage print products".  You will need to enter your magazine account number to access your account.
>
> Send us an e-mail requesting to be removed
>
> Send your address label with a request for a deletion to:
> Consumer Reports, Customer Service
> PO Box 2109
> Harlan, IA 51593-0298
>
> Or, you may call our Subscription Department at 1-800-666-5261, Monday through Friday 8:00am - 8:00pm EST, and Saturday 9:30am - 6:00pm EST.
>
> Please note that we never sell, rent or exchange e-mail addresses at any time.

*See* Sullivan Decl. ¶ 6; Ex 5 (found at http://www.consumerreports.org/cro/about-us/customer-

service-main/customer-service-faq/index.htm).  *See also id.* at ¶ 7, Ex. 6 and ¶ 8, Ex. 7 (links at

http://www.consumerreports.org/cro/customerservice/privacy-policy/opting-out/index.htm; and

http://www.consumerreports.org/cro/customerservice/privacy-policy/highlights/index.htm).  In

addition, every issue of *Consumer Reports* contains the following notice:

> "**Mailing Lists.**  We exchange or rent our print customer postal mailing list so
> that it can be provided to other publications, companies and nonprofit
> organizations that offer products or services through direct mail.  If you wish to
> have your name deleted from our list, please send your address label with a
> request for deletion from outside use to Consumer Reports, P.O. Box 2109,
> Harlin, IA  51593-0298.  We do not exchange or rent customers' email addresses.
> You can review our complete privacy policy regarding Consumer Reports
> information products, services, and programs at ConsumerReports.org/privacy.  If
> you participate in our advocacy activities, please see our Consumers Union
> Advocacy Privacy Policy at ConsumersUnion.org/about/privacy.htm regarding

> how your information is used and shared with our affiliate, the Consumers Union
> Action fund."

*See* Sullivan Decl. ¶ 4; Ex. 3.  Similar notices have appeared in both the magazine and online for

over ten years.

It is clear from the website and magazines themselves that Consumers Union provided

***explicit*** written notice to Plaintiff that his subscription information could be disclosed for

marketing purposes, and that he could opt out.  This is exactly what the VRPA permits and

Consumers Union has been disclosing its opt out policies and providing an opportunity to opt out

in exact compliance with the exemption expressly permitted by the Act.  *See* M.C.L.

§ 445.1713(d).

## POINT III
## THE VRPA CANNOT WITHSTAND THE HEIGHTENED
## <u>SCRUTINY REQUIRED BY THE FIRST AMENDMENT</u>

The VRPA targets truthful, non-misleading speech by certain speakers in certain

circumstances on certain topics.  Content and speaker-based prohibitions are "presumptively

invalid" under the First Amendment.  *U.S. v. Caronia*, 703 F.3d 149, 163 (2d Cir. 2012) (quoting

*Sorrell v. IMS Health*, 131 S. Ct. 2653, 2662-64 (2011)).  As the Supreme Court recently

determined, laws that define regulated speech by subject matter are content-based and subject to

strict scrutiny, regardless of whether they regulate "commercial" or "non-commercial" speech.

*Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218 (2015).

Judge Torres refused to apply strict scrutiny to the VRPA, finding the VRPA to target

"commercial" speech and rationalizing that the Supreme Court in *Reed* did not "explicitly

overturn[ ]" earlier jurisprudence applying lesser scrutiny to "commercial speech."  2016 WL

3369541, at *13, n.10.  These conclusions were incorrect.

Initially, Consumers Union's speech does not fit the definition of commercial speech,

DWT 30183611v1 0093526-000011

which is "speech which does no more than propose a commercial transaction." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748, 762 & n.24 (1976) (citation omitted); *see also Harris v. Quinn*, 134 S. Ct. 2618, 2639 (2014) ("Our precedents define commercial speech as ʹspeech that does no more than propose a commercial transaction.ʹ") (citation omitted)  In other words, "commercial speech" is speech—primarily advertisements— about a product that is used by the speaker to sell its product to consumers. *Bolger v. Young Drug Prods. Corp.*, 463 U.S. 60, 66 (1983) (defining commercial speech as an (1) advertisement, (2) about a product, (3) created with economic motivation).

The VRPA itself is clearly focused on non-commercial speech.  It does not, for example, regulate advertising for the speaker's products, nor does it regulate solicitations to consumers for prospective purchases of those products.  Rather, it broadly prohibits the disclosure of any information "concerning" a customer's past purchase.  Plaintiff similarly does not allege that Consumers Union's speech is an advertisement, or that it proposes any commercial transaction. Instead, Plaintiff argues that Consumers Union's speech is about a commercial transaction – his subscription to *Consumer Reports*.  Compl. ¶¶ 7, 10.

It is well-established that speech does not lose First Amendment protection because it is economically motivated, or sold for profit, or comes in the form of an advertisement. *Va. Pharmacy*, 425 U.S. at 761; *see also Sorrell v. IMS Health*, 564 U.S. 552, 567 (2011).[12]  In a series of more recent decisions the Court has emphasized that the narrower formulation

---

[12] The Supreme Court has repeatedly made clear that "economic value" and "economic motive" are not the touchstones of commercial speech; the fact that speech is tied to economic interests (even for pay or profit) does not transform speech into commercial speech.  *See, e.g., Sorrell*, 564 U.S. at 567; *Va. Pharmacy*, 425 U.S. at 761 (collecting cases); *Bd. of Trustees of State Univ. of New York v. Fox*, 492 U.S. 469, 482 (1989) ("Some of our most valued forms of fully protected speech are uttered for a profit."); *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 787 (1985) (Brennan, J., dissenting) ("[T]his Court has consistently rejected the argument that speech is entitled to diminished First Amendment protection simply because it concerns economic matters or is in the economic interest of the speaker or the audience."), cited in *Commodity Futures Trading Comm'n v. Vartuli*, 228 F.3d 94, 110 n.8 (2d Cir. 2000) (notion that speech is entitled to lesser protection "simply because [it is] economically motivated [is] a notion entirely without support in the case law.").

discussed above—whether the speech "proposes a commercial transaction"—is what controls. *See City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 422 (1993) (describing narrowing of broader test in *Bolger* and *Fox* cases); *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 579-80 (1980) (Stevens, J. concurring).

Further, since *Sorrell*, the Second Circuit and nearly every appellate court to consider cases of commercial or other forms of speech traditionally subject to "intermediate" scrutiny have applied some form of heightened scrutiny to content-based regulations like the one here. *E.g.*, *U.S. v. Caronia*, 703 F.3d at 164; *Retail Digital Network, LLC v. Appelsmith*, 810 F.3d 638, 648 (9th Cir. 2016). Assuming *arguendo* that Plaintiff could establish a legitimate, non-speculative governmental interest that the VRPA serves, he could not sustain his burden of showing that the VRPA "directly advances" that interest and is "not more extensive than is necessary to serve that interest"—i.e., that it is "narrowly drawn." *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 374 (2002).

Particularly salient to that inquiry is whether the statute is "underinclusive," that is, "so pierced by exemptions and inconsistencies" that it does not directly advance the government's interest. *Greater New Orleans Broad. Ass'n, Inc. v. U.S.*, 527 U.S. 173, 190 (1999). *E.g. Sorrell*, 564 U.S. at 563-65, 577 (statute could not survive even "intermediate" scrutiny, because it impermissibly sought to advance its policy objectives by "restraining certain speech by certain speakers"). Here, the asserted state interest is fatally undermined by the statute's favoring of "marketing" over non-marketing speech; and favoring "non-retail" sales over sales made "at retail." The VRPA is "wildly underinclusive when judged against its asserted justification, which in our view is alone enough to defeat it." *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 802 (2011) (invalidating statute singling out video game manufacturers for "disfavored

treatment," but not "booksellers, cartoonists, and movie producers").

## POINT IV
## PLAINTIFF'S UNJUST ENRICHMENT CLAIM IS PREEMPTED
## BY THE VRPA AND FAILS AS A MATTER OF LAW

Plaintiff's unjust enrichment claim rests on the allegation that he paid more for a subscription to *Consumer Reports* than he would have had he known Consumers Union was selling his Personal Reading Information.  Compl. ¶¶ 10, 79-80, 82-86.  Plaintiff claims he was denied services that he paid for and that he was "entitled to receive" – namely the confidentiality of his Personal Reading Information.  Compl. ¶ 85.  Thus, Plaintiff's claim is only alleged to— and only can—arise from VRPA's prohibition on disclosure of the subscription information. Compl. ¶¶ 10, 79-80, 82-86.

Where, as here, "comprehensive legislation prescribes in detail a course of conduct to pursue and the parties and things affected, and designates specific limitations and exceptions, the Legislature will be found to have intended that the statute supersede and replace the common law dealing with the subject matter."  *Kraft v. Detroit Ent'mnt, L.L.C.*, 261 Mich. App. 534, 545 (2004) (citations omitted) (unjust enrichment and other common law claims preempted by Michigan Gaming Control and Revenue Act); *see also Jackson v. PKM Corp.*, 430 Mich. 262, 279 (1988) (where "common-law action is predicated on defendant's alleged wrongful furnishing of intoxicants to her" it was "preempted by the dramshop act's exclusive remedy").

Moreover, unjust enrichment is an equitable doctrine, and "Michigan cases have consistently held that '[e]quity will not take jurisdiction where there is a full, complete, and adequate remedy at law'"—here, under the VRPA.  *Pacheco v. Boar's Head Provisions Co.*, No. 1:09-CV-298, 2010 WL 1323785, at *4-5 (W.D. Mich. Mar. 30, 2010) (where plaintiffs sought "the same relief under both the FLSA claim and their unjust enrichment claim" and "have not suggested that they do not have a full, complete, and adequate remedy at law under the FLSA,"

24

there was no basis "for bringing an independent action for equitable relief"; dismissing claim).

Because the VRPA provides the exclusive legal remedy, if any, for Plaintiff's claims, his

equitable claim for unjust enrichment claim must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

Plaintiff's Class Action Complaint should be dismissed in its entirety pursuant to Fed. R.

Civ. P. 12(b)(1) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), and for such

other and further relief as the Court deems appropriate.

Dated:  New York, New York
        August 12, 2016

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By:   <u>  s/ Sharon L. Schneier          </u>
      Sharon L. Schneier

1251 Avenue of the Americas, 21st Floor
New York, NY  10020-1104
(212) 489-8230 Phone
(212) 489-8340 Fax
sharonschneier@dwt.com

Sean M. Sullivan (admitted *pro hac vice*)
865 South Figueroa Street, 24th Floor
Los Angeles, CA 90017-2566
(213) 633-6800 Phone
(213) 633-6899 Fax
seansullivan@dwt.com

*Attorneys for Defendant*
*Consumers Union Of United States, Inc.*

25