

**888 SEVENTH AVENUE**
**NEW YORK, NY 10019**
**www.bursor.com**

**SCOTT A. BURSOR**
Tel: **212.989.9113**
Fax: **212.989.9163**
**scott@bursor.com**

October 20, 2017

*<u>Via ECF & FedEx Overnight Delivery:</u>*

The Honorable Kenneth M. Karas
United States District Court for the Southern District of New York
300 Quarropas Street
White Plains, New York 10601

Re:   *Ruppel v. Consumers Union of United States, Inc.*, Case No. 16-cv-02444-KMK

Dear Judge Karas:

    I write on behalf of Plaintiff Don Ruppel ("Plaintiff") pursuant to Rule II.A of Your Honor's Individual Practices, to request a premotion conference regarding Plaintiff's anticipated Motion For Partial Summary Judgment.

    This case is identical to *Boelter v. Hearst Communications, Inc.*, -- F. Supp. 3d --, 2017 WL 3994934 (S.D.N.Y. Sept. 7, 2017) (Torres, J.) [hereinafter *Hearst*] where Judge Torres granted the plaintiff's motion for partial summary judgment on a claim under the Michigan Preservation Of Personal Privacy Act, M.C.L. §§ 445.1711, *et seq.* (the "PPPA") arising from Hearst's disclosures of her Personal Reading Information to a data appender and a data cooperative.

    Phase I discovery revealed that Defendant Consumers Union of United States, Inc. ("Defendant") disclosed Plaintiff's magazine subscription records, including his name, address, and the magazine titles he purchased (his Personal Reading Information, or "PRI") to at least 3 third parties, including two data appenders and a data cooperative, who acted as a "middleman" to sell or trade that information to additional third parties. Phase I discovery also revealed that Defendant rented and disclosed Plaintiff's PRI to 16 different third parties, including charitable organizations. Given the very narrow limitations the Court imposed on Phase I discovery, these disclosures are likely just the tip of the iceberg. The record amassed during Phase I discovery confirms that Defendant established a sophisticated network of third-party data-mining companies to store and transmit its subscribers' PRI to anyone that would pay for it. Defendant did this on a routine, automated basis, for all subscribers, for years. And Defendant did this without regard to its obligations under the PPPA.

    The disclosures Plaintiff challenges fall into three categories: (i) disclosures to data appenders; (ii) disclosures to a data cooperative; and (iii) rentals to third parties, including charitable organizations.

**Disclosures To Data Appenders: ▓▓▓ And ▓▓▓**

Discovery revealed that Defendant disclosed its customers' PRI, including Plaintiff's PRI, to two data appenders: ▓▓▓ and ▓▓▓. After receiving Defendant's customers' PRI, ▓▓▓ and ▓▓▓ append geographic and demographic data to those records in order to enhance the value for Defendant. Defendant is able to charge more money for rentals of its subscriber lists with these appended data, and is able to attract a larger universe of list renters. These disclosures are not related to fulfilling magazine subscriptions. They are made so that Defendant can generate more revenue from its list rental business.

It is undisputed that Defendant disclosed Plaintiff's PRI to ▓▓▓ and ▓▓▓. It is also undisputed that ▓▓▓ and ▓▓▓ appended geographic and demographic data to Plaintiff's customer record, including, but not limited to, "race," "net worth," "community charities," "marital status," and "presence of children."

**Disclosures To The ▓▓▓ Data Cooperative**

Discovery revealed that Defendant disclosed its customers' PRI, including Plaintiff's PRI, to the ▓▓▓ data cooperative. Defendant disclosed its customers' PRI to that data cooperative on a regular basis. A data cooperative is a cooperative in which mailers can contribute customer names and related information of their files in exchange for becoming eligible to order and pay for receiving other consumer names from that cooperative for their own prospecting efforts. Membership in this cooperative allows Defendant to access the cooperative's data and use it to solicit completely separate people. These disclosures are not related to fulfilling magazine subscriptions. They are made so that Defendant can access the data cooperative's data for the purpose of soliciting new customers.

It is undisputed that Defendant disclosed Plaintiff's PRI to ▓▓▓. And it is also undisputed that the information associated with these disclosures was **not** used for marketing purposes.

**Disclosures To List Renters**

Discovery revealed that as a part of its business practices, Defendant rents or exchanges its customer lists with third parties, including charitable organizations seeking to raise awareness and solicit donations. The only reason that Defendant rents its customer lists is to make money. As described above, Defendant uses the geographic and demographic information it obtains from ▓▓▓ and ▓▓▓ to charge more money for its list rentals, and to attract a larger universe of list renters.

It is undisputed that Defendant rented Plaintiff's PRI to 16 different third parties since 2013, including to charitable organizations such as the Veterans of Foreign Wars.

**There Is No Genuine Dispute With Respect To Any Fact Material To Establishing The Four Elements Of A Violation Of The PPPA**

To establish his claim under the PPPA, Plaintiff must prove four elements:

  (1)  Defendant is engaged in the business of selling magazines at retail;

  (2)  Plaintiff purchased the magazines from Defendant;

  (3)  Defendant disclosed a record or information concerning Plaintiff's purchase of the magazines; and

  (4)  The disclosed record or information indicated Plaintiff's identity.

*Hearst*, 2017 WL 3994934, at *20 (citing Michigan Non-Standard Jury Instr. Civil § 32:10 (Aug. 2016)); *see also* M.C.L. § 445.1712. Plaintiff's proof of each of these four elements is uncontroverted.

  First, it is undisputed that Defendant is engaged in the business of selling magazine subscriptions at retail. And it is undisputed that Defendant sells magazine subscriptions directly to its subscribers, and sold magazine subscriptions directly to the Plaintiff.

  Second, it is undisputed that Plaintiff purchased subscriptions to *Consumer Reports* magazine directly from Defendant.

  Third, undisputed evidence confirms that Defendant disclosed records or information concerning Plaintiff's purchases of magazine subscriptions to ▇▇▇▇ ▇▇▇▇▇▇▇▇, ▇▇▇▇ and 16 other third parties.

  Fourth, it is undisputed that the disclosures to ▇▇▇▇ ▇▇▇▇▇▇▇▇, ▇▇▇▇ and 16 other third parties indicated Plaintiff's identity. Plaintiff's name and address were contained in all of these PRI disclosures.

  As in *Hearst*, Plaintiff is entitled to partial summary judgment on his PPPA claim, and is entitled to $5,000 statutory damages as a result. *See* M.C.L. § 445.1715.

              Very truly yours,

              Scott A. Bursor

CC:  All counsel of record (via ECF & Email)