**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DON RUPPEL, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>     v.<br><br>CONSUMERS UNION OF UNITED STATES, INC.<br><br>                    Defendant. | Civil Action No. 16-cv-02444-KMK |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR**
**<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

Dated: April 9, 2018

**BURSOR & FISHER, P.A.**

Scott A. Bursor
Joseph I. Marchese
Philip L. Fraietta
Frederick J. Klorczyk III
888 Seventh Avenue
New York, NY  10019
Telephone:  (646) 837-7150
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
        jmarchese@bursor.com
        pfraietta@bursor.com
        fklorczyk@bursor.com

*Proposed Class Counsel*

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ................................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ......................................................... 3

    A.    Michigan's Preservation Of Personal Privacy Act ............................... 3

M.C.L. § 445.1712. ........................................................................................................... 3

    B.    Plaintiff's Allegations ............................................................................ 3

    C.    The Litigation History And Settlement Discussions ............................. 4

TERMS OF THE SETTLEMENT ...................................................................................... 6

    A.    Class Definition .................................................................................... 6

    B.    Monetary Relief ................................................................................... 6

    C.    Release ................................................................................................. 7

    D.    Notice And Administration Expenses ................................................... 7

    E.    Incentive Award ................................................................................... 7

    F.    Attorneys' Fees And Expenses ............................................................ 7

ARGUMENT ...................................................................................................................... 7

    I.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS
        APPROPRIATE ............................................................................................... 7

        A.    Litigation Through Trial Would Be Complex, Costly, And
            Long  (*Grinnell* Factor 1) .............................................................. 10

        B.    The Reaction Of The Class (*Grinnell* Factor 2) ............................ 11

        C.    Discovery Has Advanced Far Enough To Allow The
            Parties To Responsibly Resolve The Case (*Grinnell* Factor
            3) ................................................................................................. 11

        D.    Plaintiff Would Face Real Risks If The Case Proceeded
            (*Grinnell* Factors 4 And 5) ......................................................... 12

        E.    Establishing A Class And Maintaining It Through Trial
            Would Not Be Simple (*Grinnell* Factor 6) ................................. 12

        F.    Defendant's Ability To Withstand A Greater Judgment
            (*Grinnell* Factor 7) ..................................................................... 13

        G.    The Settlement Amount Reasonable In Light Of The
            Possible Recovery And The Attendant Risks Of Litigation
            (Grinnell Factors 8 And 9) ............................................................ 13

    II.    CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS
        IS APPROPRIATE ......................................................................................... 14

        A.    Numerousity ................................................................................... 16

        B.    Commonality ................................................................................. 16

        C.    Typicality ...................................................................................... 18

        D.    Adequacy Of The Named Plaintiff ............................................... 19

|   |   | 1. | Common Questions Predominate ...................................................... 21 |
|   |   | 2. | A Class Action Is A Superior Mechanism ....................................... 22 |
| III. | | PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL................................................................................ 23 | |
| IV. | | THE PROPOSED NOTICE PLAN SHOULD BE APPROVED............................ 23 | |
|   | A. | The Content Of The Proposed Class Notice Complies With Rule 23(c)(2)............................................................................ 23 | |
|   | B. | The Plan For Distribution Of The Class Notice Complies With Rule 23(c)(2) ................................................................. 24 | |

CONCLUSION.......................................................................................................... 25

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) .......................................................................................... 15, 21, 22

*Brown v. Title Ticor Ins. Co.,*
982 F.2d 386 (9th Cir. 1992) ...................................................................................... 21

*City of Detroit v. Grinnell Corp.,*
495 F.2d 448 (2d Cir. 1974) ............................................................................... 9, 13, 14

*Consol. Rail Corp. v. Town of Hyde Park,*
47 F.3d 473 (2d Cir. 1995) ......................................................................................... 16

*Coulter-Owens v. Time, Inc.,*
308 F.R.D. 524 (E.D. Mich. 2015) ..................................................................... 17, 18, 19

*County of Suffolk v. Long Island Lighting Co.,*
710 F. Supp. 1422 (E.D.N.Y. 1989) ............................................................................ 15

*Denney v. Deutsche Bank AG,*
443 F.3d 253 (2d Cir. 2006) ....................................................................................... 19

*Dziennik v. Sealift, Inc.,*
2007 WL 1580080 (E.D.N.Y. May 29, 2007) .............................................................. 19

*Ebin v. Kangadis Food Inc.,*
297 F.R.D. 561 (S.D.N.Y. 2014) ........................................................................... 19, 20

*Frank v. Eastman Kodak Co.,*
228 F.R.D. 174 (W.D.N.Y. 2005) .......................................................................... passim

*Gen. Tel. Co. of Sw. v. Falcon,*
457 U.S. 147 (1982) ................................................................................................... 17

*Gilliam v. Addicts Rehab. Ctr. Fund,*
2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ................................................................ 14

*Green v. Wolf Corp.,*
406 F.2d 291 (2d Cir. 1968) ....................................................................................... 22

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) .......................................................................... 15, 16, 23, 24

*In re Austrian & German Bank Holocaust Litig.,*
80 F. Supp. 2d 164 (S.D.N.Y. 2000) ...................................................................... 10, 12

*In re BankAmerica Corp. Secs. Litig.,*
210 F.R.D. 694 (E.D. Mo. 2002) .................................................................................. 9

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   2007 WL 2230177 (S.D.N.Y. July 27, 2007) .................................................... 9

*In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*,
   55 F.3d 768 (3d. Cir. 1995) ................................................................................ 15

*In re Google Buzz Privacy Litig.*,
   2011 WL 7460099 (N.D. Cal. June 2, 2011) ....................................... 2, 4, 5, 6

*In re Prudential Insur. Sales Practices Litig.*,
   962 F. Supp. 450 (D.N.J. 1997) ......................................................................... 22

*In re Traffic Executive Ass'n*,
   627 F.2d 631 (2d Cir. 1980) ................................................................................. 8

*In re Visa Check/MasterMoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001) ............................................................................... 22

*Joel A. v. Giuliani*,
   218 F.3d 132 (2d Cir. 2000) ............................................................................... 14

*Kamean v. Local 363, Int'l Bhd. of Teamsters*,
   109 F.R.D. 391 (S.D.N.Y. 1986) ....................................................................... 17

*Kinder v. Meredith Corp.*,
   2016 WL 454441 (E.D. Mich. Feb. 5, 2016) ..................................................... 17

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ................................................................................ 2

*Lenahan v. Sears, Roebuck & Co.*,
   2006 WL 2085282 (D.N.J. July 10, 2006) .......................................................... 15

*Lynn's Food Stores, Inc. v. U.S.*,
   679 F.2d 1350 (11th Cir. 1982) ............................................................................ 8

*Marcus v. Kan. Dep't of Revenue*,
   209 F. Supp. 2d 1179 (D. Kan. 2002) ................................................................... 8

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997) ............................................................................... 18

*Martens v. Smith Barney Inc.*,
   181 F.R.D. 243 (S.D.N.Y. 1998) .................................................................. 19, 20

*Maywalt v. Parker & Parsley Petroleum Co.*,
   67 F.3d 1072 (2d Cir. 1998) ................................................................................. 8

*McBean v. City of New York*,
   228 F.R.D. 487 (S.D.N.Y. 2005) ....................................................................... 21

*Milonas v. Williams*,
   691 F.2d 931 (10th Cir. 1982) ........................................................................... 18

*Newman v. Stein,*
 464 F.2d 689 (2d Cir. 1972) ........................................................................................ 13

*Ortiz v. Fibreboard Corp.,*
 527 U.S. 815 (1999) ................................................................................................... 21

*Parker v. Time Warner Entertainment Co.,*
 239 F.R.D. 318 (E.D.N.Y. 2007) .............................................................................. 18

*Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of N.Y. & N.J.,*
 698 F.2d 150 (2d Cir. 1983) ...................................................................................... 17

*Robidoux v. Celani,*
 987 F.2d 931 (2d Cir. 1993) ............................................................................... 16, 18

*Rossini v. Ogilvy & Mather, Inc.,*
 798 F.2d 590 (2d Cir. 1986) ...................................................................................... 21

*Taylor v. Trusted Media Brands, Inc.,*
 7:16-cv-01812- KMK .......................................................................................... passim

*TBK Partners, Ltd. v. Western Union Corp.,*
 517 F. Supp. 380 (S.D.N.Y. 1981) ............................................................................ 10

*Teachers' Ret. Sys. Of Louisiana v. A.C.L.N. Ltd.,*
 2004 WL 2997957 (S.D.N.Y. May 14, 2004) ........................................................... 14

*Torres v. Gristede's Oper. Corp.,*
 2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) ........................................................... 12

*Toure v. Cent. Parking Sys.,*
 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) .......................................................... 19

*Trief v. Dun & Bradstreet Corp.,*
 144 F.R.D. 193 (S.D.N.Y. 1992) .............................................................................. 17

*Trinidad v. Breakaway Courier Sys., Inc.,*
 2007 WL 103073 (S.D.N.Y. Jan. 12, 2007) .............................................................. 18

*Wagner v. NutraSweet Co.,*
 95 F.3d 527 (7th Cir. 1996) ....................................................................................... 18

*Wal-Mart Stores, Inc. v. Dukes,*
 564 U.S. 338 (2011) .............................................................................................. 17, 21

*Wal-Mart Stores, Inc. v.Visa U.S.A. Inc.,*
 396 F.3d 96 (2d Cir. 2005) ..................................................................................... 7, 8

*Wright v. Stern,*
 553 F. Supp. 2d 337 (S.D.N.Y. 2008) ........................................................................ 8

## STATUTES

28 U.S.C. § 1715 ................................................................................................................ 25

M.C.L. § 445.1712 ................................................................................................................... 3

**RULES**

Fed. R. Civ. P. 16 ..................................................................................................................... 5

Fed. R. Civ. P. 23 ............................................................................................................. passim

**OTHER AUTHORITES**

Newberg on Class Actions (4th ed. 2002) ....................................................................... 8, 9, 15

## INTRODUCTION

This proposed class action Settlement is identical to the settlement this Court approved earlier this year in *Taylor v. Trusted Media Brands, Inc.*, 16-cv-01812-KMK (S.D.N.Y.) – but for double the money.  The settlement fund in *Taylor* was $8.225 million.  Here, the Settlement Class is roughly half the size of the *Taylor* class, but the settlement fund is nearly twice the amount:  a $16.375 million non-reversionary cash Settlement Fund, which will be used to pay all approved claims by class members, notice and administration expenses, a Court-approved incentive award to Plaintiff, and attorneys' fees to proposed Class Counsel to the extent awarded by the Court.  In terms of the monetary relief to class members, those who submit a short and simple one-page claim form will receive a *pro rata* cash award, estimated at $180.[1]  As discussed herein, the Settlement – which was reached with the assistance of U.S. Magistrate Judge Frank Maas (ret.), formerly of the Southern District of New York and now a mediator with JAMS (New York) – is modeled after previously approved settlements reached with Defendant's competitors,[2] and measured by both total dollars and per class member recovery, is the largest settlement ever achieved in a Michigan Preservation of Personal Privacy Act (the "PPPA") case.

The Court need not evaluate the Settlement in a vacuum, since it follows examples set by those that came before it.  This Court recently approved the *Taylor* settlement at $8.225 million, which paid out approximately $50 to each claiming class member.  Prior to that, in the first ever PPPA settlement, *Halaburda v. Bauer Publishing Co, LP*, 2:12-cv-12831, Dkt. 68 (E.D. Mich. January 6, 2015), the court granted final approval to a settlement (with the same structure but on

---

[1] This estimate is based upon participation rates that have been experienced by counsel in similar consumer class action settlements, including *Taylor*.

[2] *See Taylor v. Trusted Media Brands, Inc.*, 7:16-cv-01812, Dkt. 87 (S.D.N.Y. Feb. 1, 2018); *see also Halaburda v. Bauer Publishing Co, LP*, 2:12-cv-12831, Dkt. 68 (E.D. Mich. January 6, 2015); *Kinder v. Meredith Corporation*, 1:14-cv-11284, Dkt. 72 (E.D. Mich. Oct. 5, 2015); *Coulter-Owens v. Rodale, Inc.*, 1:14-cv-11284-TLL-CEB, Dkt. 54 (E.D. Mich. Sept. 29, 2016); *Moeller v. American Media, Inc.*, 5:16-cv-11367, Dkt. 42 (E.D. Mich. Sept. 28, 2017).

behalf of a much smaller class) that created a $775,000 cash fund.  In *Coulter-Owens v. Rodale, Inc.*, 1:14-cv-11284-TLL-CEB, Dkt. 54 (E.D. Mich. Sept. 29, 2016), the court granted final approval to a settlement (with the same structure and on behalf of a similarly sized class) that created a $4.5 million cash fund that paid out approximately $42 to each claiming class members.  In *Kinder v. Meredith Corporation*, 1:14-cv-11284, Dkt. 72 (E.D. Mich. Oct. 5, 2015), the court granted final approval (with the same structure and on behalf of a larger class) that created a $7.5 million case fund that paid out approximately $50 to each claiming class members.  And in *Moeller v. American Media, Inc.*, 5:16-cv-11367, Dkt. 42 (E.D. Mich. Sept. 28, 2017) the court granted final approval to a settlement (with the same structure and on behalf of a similarly sized class) that created a $7.6 million case fund that paid out approximately $100 to each claiming class members.  Here, Class Counsel estimates that the class members will receive approximately $180 apiece.

Looking beyond the PPPA to privacy cases more generally, the instant Settlement also provides greater cash value to class members than privacy settlements reached in litigation over statutory claims that have been approved throughout the country.  *See, e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 820-22 (9th Cir. 2012) *cert. denied*, 134 S. Ct. 8 (2013) (approving a settlement of federal Video Privacy Protection Act ["VPPA"] claims, and directing $9.5 million to *cy pres* as the sole form of monetary relief); *In re Netflix Privacy Litig.*, No. 5:11-cv-00379, Dkt. 256 (N.D. Cal. Mar. 18, 2013) (approving $9 million *cy pres* settlement of VPPA claims); *In re Google Buzz Privacy Litig.*, 2011 WL 7460099, at *3 (N.D. Cal. June 2, 2011) (approving $8.5 million *cy pres* settlement).

Given the exceptional relief secured on behalf of the Class, the Court should have no hesitation finding that the Settlement falls within the range of possible approval.  Accordingly, Plaintiff respectfully requests that the Court (1) grant preliminary approval of the Settlement

Agreement; (2) provisionally certify the settlement class under Fed. R. Civ. P. 23(b)(3) in

connection with the settlement process; (3) appoint Bursor & Fisher, P.A. as Class Counsel; (4)

appoint Don Ruppel as the Class Representative for the Settlement Class; and (5) approve the

Notice Plan for the Settlement described in the Settlement Agreement and its Exhibits, as well as

the specific Notice of Class Action and Proposed Settlement (the "Proposed Notice"), attached as

Exhibits B-D to the Settlement Agreement, and direct distribution of the Proposed Notice.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.   Michigan's Preservation Of Personal Privacy Act

The Michigan legislature passed the PPPA "to preserve personal privacy with respect to

the purchase, rental, or borrowing of written materials, sound recordings, and video recordings."

M.C.L. § 445.1712.  As such, the PPPA provides that:

> a person, or an employee or agent of the person, engaged in the
> business of selling at retail . . . books or other written materials . . .
> shall not disclose to any person, other than the customer, a record
> or information concerning the purchase . . . of those materials by a
> customer that indicates the identity of the customer.

M.C.L. § 445.1712.

To enforce the statute, the PPPA authorizes civil actions and provides for the recovery of

statutory damages in the amount of $5,000, plus costs and reasonable attorneys' fees.  *See id.*

§ 445.1715.

### B.   Plaintiff's Allegations

Consumer Reports is a non-profit company that publishes *Consumer Reports* and other

magazines in the United States.  *See* Plaintiff's Class Action Complaint, Dkt. No. 1 ["Compl."],

¶¶ 1 n.1, 11.  Plaintiff alleges that Consumer Reports sells information related to its customers'

magazine subscription histories and personal reading habits.  *Id.* ¶¶ 1-4, 8, 42-48.  To increase

the value of such information, Plaintiff alleges that TMBI trades its customers' protected reading

information with certain third parties – including data mining companies – in exchange for other

3

demographic and lifestyle data that such companies have already gathered (or "mined") on each subscriber.  *Id.* ¶¶ 7, 42.  Plaintiff further alleges that Consumer Reports thereafter "enhances" its own customer profiles with this additional data (*e.g.*, income levels, religion, age, race, political affiliation, travel habits, medical conditions, etc.), and then sells the enhanced information to other unrelated third parties for a profit.  *Id.* ¶¶ 7-8, 43-44.

Plaintiff further alleges that no matter how consumers subscribe (*i.e.*, via postcard, over the phone, on Consumer Reports' website, or through a subscription agent's website), Consumer Reports' customers never provide consent to disclose information related to their magazine subscriptions to third parties.  *Id.* ¶¶ 9, 45-46, 48.  This is because – during the subscription process – Plaintiff claims that customers are not required to consent to any terms or policies informing them of Consumer Reports' disclosure practices.  *Id.*  Likewise, even after subscribing, Plaintiff alleges that Consumer Reports fails to notify customers that it will disclose their protected reading information to third parties.  *Id.*  Nonetheless, Consumer Reports is in the business of disclosing all of their customers' protected reading information to various third parties, without any consent.  *Id.* ¶¶ 7-9, 45-46, 48.

### C.   The Litigation History And Settlement Discussions

Plaintiff filed his class action lawsuit on April 1, 2016 in the United States District Court for the Southern District of New York.  Dkt. 1.  In response to the complaint, on June 14, 2016, Consumer Reports filed a letter requesting a premotion conference on a motion to dismiss under Rules 12(b)(1) and 12(b)(6), arguing, *inter alia*, that Plaintiff lacked Article III standing and failed to state a claim upon which relief could be granted.  Dkt. 10.  On August 12, 2016 – after a premotion conference at which permission to file was granted by the Court – Consumer Reports served a motion to dismiss under Rules 12(b)(1) and (b)(6).  Dkt. 19.  On September 8, 2016,

Plaintiff opposed Consumer Reports' motion to dismiss.  Dkt. 28.  On September 26, 2016, Consumer Reports filed a reply in support of its motion to dismiss.  Dkt. 24.

On October 20, 2016, the Court held an initial scheduling conference pursuant to Fed. R. Civ. P. 16 and thereafter entered a Scheduling Order.  Declaration of Joseph I. Marchese In Support Of Plaintiff's Motion For Preliminary Approval Of Class Action Settlement ("Marchese Decl.") ¶ 4.  The Parties then conducted substantial written discovery, document discovery, and deposition discovery on the merits of the case, which included the production and review of thousands of pages of documents, and several meet and confer conferences.  *Id.* ¶¶ 5-9.  The Parties each substantially completed their document productions by February 16, 2017.  *Id.* ¶ 8.

On June 12, 2017, the Court issued an order denying Consumer Reports' motion to dismiss.  Dkt. 68.  On July 31, 2017, the Court held a status conference at which the Parties informed the Court that Phase I discovery had been completed, and that they intended to engage in a mediation with Jed Melnick, Esq. of JAMS NY.  Marchese Decl. ¶ 12.  On August 28, 2017, the Parties participated in a full day mediation with Mr. Melnick at JAMS's offices in New York.  *Id.* ¶ 13.  While the Parties engaged in good faith negotiations, which at all times were at arms' length, they failed to reach an agreement.  *Id.*

On October 20, 2017, the Parties filed premotion letters in support of their motions for summary judgment.  Dkts. 77 & 79.  And on October 27, 2017, the Parties filed responses to their respective letters.  Dkts. 81 & 83.  Therefore, on December 5, 2017, the Court held a premotion conference, granted both Parties permission to file motions for summary judgment and set a briefing schedule.  Dkt. 91; *see also* Marchese Decl. ¶ 14.

On February 9, 2018, the Parties served their motions for summary judgment and supporting documents.  Marchese Decl. ¶ 15.  Shortly thereafter, the Parties agreed to participate in a second mediation, which the Parties agreed would take place before Judge Maas of JAMS

NY. *Id.* ¶ 16.

On February 21, 2018, the Parties participated in a full-day mediation with Judge Maas at JAMS's offices in New York. *Id.* ¶ 17.  While the Parties engaged in good faith negotiations, which at all times were at arms' length, they were unable to reach an agreement that day. *Id.* But the Parties agreed to continue their settlement negotiations at the conclusion of the mediation. *Id.*

In the weeks following the mediation session, the Parties continued to engage in settlement negations and ultimately reached an agreement. *Id.* ¶ 18.

## TERMS OF THE SETTLEMENT

The key terms of the Settlement Agreement (the "Settlement" or the "Agreement"), attached as Exhibit A, are briefly summarized as follows:

### A.   Class Definition

The "Settlement Class" is defined as:

> [A]ll Persons with a Michigan street address who between April 1, 2010 and October 31, 2016, purchased or had a subscription to a Consumer Reports Publication.[3]

Agreement ¶ 1.31.

### B.   Monetary Relief

Consumer Reports shall establish or cause to be established a $16.375 million non-reversionary Settlement Fund, from which each Settlement Class Member who submits a valid claim shall be entitled to a *pro rata* portion after payment of notice and administrative expenses, attorneys' fees, and an incentive award to the Class Representative. *Id.* ¶¶ 1.33, 2.1.  No portion

---

[3] Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this Action and members of their families; (2) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons.

of the Settlement Fund will revert back.  *Id.* ¶ 2.1

### C.   Release

In exchange for the relief described above, Consumer Reports and each of its related and affiliated entities as well as all "Released Parties," as defined in ¶ 1.27 of the Settlement, will receive a full release of all claims arising out of or related to Consumer Reports' disclosure of its Michigan customers' magazine subscription information.  *See id.* ¶¶ 1.26-1.28.

### D.   Notice And Administration Expenses

The Settlement Fund will be used to pay the cost of sending the Notice set forth in the Agreement and any other notice as required by the Court, as well as all costs of administration of the Settlement.  *Id.* ¶¶ 1.29, 1.33.

### E.   Incentive Award

In recognition for his efforts on behalf of the Settlement Class, Consumer Reports has agreed that Plaintiff Ruppel may receive, subject to Court approval, an incentive award of $7,500 from the Settlement Fund, as appropriate compensation for his time and effort serving as Class Representative and as a party to the Action.  Consumer Reports will not oppose any request limited to this amount.  *Id.* ¶ 8.3.

### F.   Attorneys' Fees And Expenses

Consumer Reports has agreed that the Settlement Fund may also be used to pay Class Counsel reasonable attorneys' fees and to reimburse expenses in this Action, in an amount to be approved by the Court.  *Id.* ¶¶ 1.33, 8.1.  Class Counsel has agreed to petition the Court for no more than one-third of the Settlement Fund.  *Id.* ¶ 8.1.

## ARGUMENT

## I.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law favors compromise and settlement of class action suits.  *Wal-Mart Stores, Inc.*

*v.Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotations omitted); *see also Newberg on Class Actions* § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").  The approval of a proposed class action settlement is a matter of discretion for the trial court.  *Maywalt v. Parker & Parsley Petroleum Co*., 67 F.3d 1072, 1079 (2d Cir. 1998).

Plaintiff seeks preliminary approval, which requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties.  *Newberg* § 11.25.  To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness."  *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980); *Newberg* § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members).

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement."  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005).  "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *Wal-Mart Stores*, 396 F.3d at 116 (internal quotations omitted); *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982) (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness); *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008) (same); *Marcus v. Kan. Dep't of Revenue*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002) ("When a settlement is reached by

experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable.").

If the settlement was achieved through arm's-length negotiations by experienced counsel, "[a]bsent fraud or collusion," "[courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, *4 (S.D.N.Y. July 27, 2007); *In re BankAmerica Corp. Secs. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations . . .") (internal quotations omitted).

This first step in the settlement process simply allows notice to issue to the class and for class members to object or opt-out of the settlement.  After the notice period, the Court will be able to evaluate the settlement with the benefit of the class members' input.

In evaluating a class action settlement, courts in the Second Circuit consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).  Although the Court's task on this motion is merely to perform an "initial evaluation," *Newberg* § 11.25, it is useful for the Court to consider the criteria on which it will ultimately judge the settlement.

The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *Grinnell*, 495 F.2d at 463.

Nearly all of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of preliminary approval.

> **A.**     **Litigation Through Trial Would Be Complex, Costly, And Long  (*Grinnell* Factor 1)**

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff seeks to avoid significant expense and delay, and instead ensure recovery for the class.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  Courts have consistently held that, unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results.  *TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), *aff'd,* 675 F.2d 456 (2d Cir. 1982).

This case is no exception.  As discussed above, the Parties have engaged in extensive document and deposition discovery, including third-party discovery.  Marchese Decl. ¶¶ 5-9. The next steps in the litigation would have been resolution by the Court of the Parties' motions for summary judgment, and then class certification, which would be at minimum costly and time-consuming for the Parties and the Court, and creates risk that a litigation class would not be certified and/or that the Settlement Class would recover nothing at all.  Consumer Reports has indicated that it would continue to assert numerous defenses on the merits, including that the PPPA does not prohibit the disclosure of the magazine information at issue at all.  More specifically, Plaintiff is aware that Defendant would continue to assert a number of defenses on the merits, including that the PPPA neither prohibits the disclosure of the magazine subscriptions information at issue (because the recipients of the disclosures are its agents), nor applies to Defendant at all because it is not engaged in the business of selling magazines "at retail," as is

10

required to come under the scope of the statute.  Defendant will also continue to challenge Plaintiff's standing, and the constitutionality of the PPPA, as well as its applicability to magazines in particular and the magazine publishing industry in general.  Looking beyond trial, Plaintiff is also keenly aware of the fact that Defendant could appeal the merits of any adverse decision, and that in light of the statutory damages in play it would attempt to argue – in both the trial and appellate courts – for a reduction of damages based on due process concerns.  *Id.* ¶ 23.

The Settlement, on the other hand, permits a prompt resolution of this action on terms that are fair, reasonable and adequate to the Class.  This result will be accomplished years earlier than if the case proceeded to judgment through trial and/or appeals, and provides certainty whereas litigation does not and could result in defeat for the Class on summary judgment, at trial or on appeal.  Consequently, this *Grinnell* factor plainly weighs in favor of preliminary approval of the proposed Settlement.

**B.      The Reaction Of The Class (*Grinnell* Factor 2)**

Since Notice of the Settlement has not yet issued to the Class, it is not possible to gauge the reaction of the Class at this time.  Prior magazine settlements, including *Taylor*, suggest that the Class will react favorably.

**C.      Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3)**

As discussed above, the Parties have conducted substantial discovery, including document production, interrogatories, depositions, and third-party discovery.  *See supra*; *see also* Marchese Decl. ¶¶ 5-9.  The documents included Plaintiff's magazine subscription records, records of transmissions of Plaintiff's customer information to multiple third party companies, and Defendant's purported notices of the disclosures.  Class Counsels' experience in similar matters, as well as the efforts made by counsel on both sides confirms that they are sufficiently well apprised of the facts of this action, and the strengths and weaknesses of their respective

cases, to make an intelligent analysis of the proposed settlement.

"The pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating." *Torres v. Gristede's Oper. Corp.*, 2010 WL 5507892, at *5 (S.D.N.Y. Dec. 21, 2010) (internal quotation omitted). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (internal quotation marks omitted). The discovery conducted in this matter clearly traverses this hurdle. This *Grinnell* factor thus also weighs in favor of preliminary approval.

**D.    Plaintiff Would Face Real Risks If The Case Proceeded (*Grinnell* Factors 4 And 5)**

Although Plaintiff's case is strong, it is not without risk. At the time of the settlement, Defendant was briefing a motion for summary judgment, and had made it clear that it will vigorously contest the certification of a litigation class. In weighing the risks of certifying a class and establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *Id.* at 177 (internal quotations omitted).

In the context of this litigation, Plaintiff and the Class face risks in overcoming Defendant's summary judgment motion and certifying a class. Moreover, further litigation will only delay relief to the Class Members. The proposed Settlement alleviates these risks, and provides a substantial benefit to the Class in a timely fashion. These *Grinnel* factors thus favor preliminary approval.

**E.    Establishing A Class And Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6)**

The risk of maintaining the class status through trial is also present. The Court has not

yet certified the proposed Class and the Parties anticipate that such a determination would be reached only after Phase I dispositive motions are briefed and decided, Phase II discovery is completed, and exhaustive class certification briefing is filed.  Defendant would likely argue that individual questions preclude class certification.  Defendant would also likely argue that a class action is not a superior method to resolve Plaintiff's claims, and that a class trial would not be manageable.

Should the Court certify the class, Defendant would likely challenge certification through a Rule 23(f) petition and subsequently move to decertify, forcing additional rounds of briefing.  Risk, expense, and delay permeate such a process.  The proposed settlement eliminates this risk, expense, and delay.  This factor weighs in favor of preliminary approval.

### F.  Defendant's Ability To Withstand A Greater Judgment (*Grinnell* Factor 7)

Defendant probably could not withstand a much greater judgment.  Defendant is a nonprofit organization that has no owners, shareholders, or commercial investors.  *See* 10/20/17 Letter to Court, Dkt. 79 at 1 n.1.  Thus, this factor weights in favor of preliminary approval.

### G.  The Settlement Amount Reasonable In Light Of The Possible Recovery And The Attendant Risks Of Litigation (*Grinnell* Factors 8 And 9)

The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum."  *Frank*, 228 F.R.D. at 186 (W.D.N.Y. 2005).  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought.  As the Second Circuit stated in *Grinnell*, "[t]here is no reason, at least in

13

theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery."  495 F.2d at 455 n.2.

Here, Class Counsel projects that each Class Member is expected to receive $180 in cash. In addition, Defendant has agreed to pay the costs of notice and administration as well as reasonable counsel fees and costs for Class Counsel from the all-in fund established by the Settlement.  Agreement ¶¶ 1.33, 8.1.  Weighing the benefits of the Settlement against the risks associated with proceeding in litigation and in collecting on any judgment, the Settlement is more than reasonable.  This is especially true given Defendant's nonprofit status.  *See supra* at 13.  Moreover, where – as here – a settlement assures immediate payment of substantial amounts to Class Members, and does not "sacrific[e] 'speculative payment of a hypothetically larger amount years down the road,'" the settlement is reasonable under this factor.  *See Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, *5 (S.D.N.Y. Mar. 24, 2008) (quoting *Teachers' Ret. Sys. Of Louisiana v. A.C.L.N. Ltd.*, 2004 WL 2997957, *5 (S.D.N.Y. May 14, 2004)).  Thus, these *Grinnell* factors also weigh in favor of preliminary approval.

All of the *Grinnell* factors weigh in favor of approval, or are neutral.  If objections arise after notice is issued to the Class, the Court may reevaluate its determination.  Because the settlement on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani,* 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant preliminary approval.

## II.    CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE

Plaintiff respectfully requests that the Court – as it did in *Taylor* – conditionally certify the Settlement Class for purposes of effectuating the settlement.  The Court should determine that the proposed Settlement Class satisfies Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation, and at least one of the subsections of

14

Rule 23(b), *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *Newberg* § 11:27 (citing *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.* ("*In re GMC*"), 55 F.3d 768 (3d Cir. 1995)), and provisionally certify the settlement class, and appoint Interim Class Counsel as class counsel and the Named Plaintiff as the class representative.

As discussed below, all of the certification requirements for settlement purposes are met and Defendant consents to provisional certification. *See Newberg* § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only."); *County of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ("It is appropriate for the parties to a class action suit to negotiate a proposed settlement of the action prior to certification of the class."), *aff'd in part, rev'd in part on other grounds*, 907 F.2d 1295 (2d Cir. 1990).

Provisional settlement approval, class certification, and appointment of class counsel have practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed Settlement Agreement, and setting the date and time of the final approval hearing. *See In re GMC,* 55 F.3d at 784; *Lenahan v. Sears, Roebuck & Co.*, 2006 WL 2085282, at *6 (D.N.J. July 10, 2006) (conditionally certifying multi-state classes and granting preliminary approval to nationwide wage and hour settlement).

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that:

> (1) the class is so numerous that joinder of all members is impracticable;

> (2) there are questions of law or fact common to the class;

>>> (3) the claims or defenses of the representative parties are
>>> typical of the claims or defenses of the class; and

>>> (4) the representative parties will fairly and adequately protect
>>> the interests of the class.

Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires the court to find that:

>>> questions of law or fact common to the members of the class
>>> predominate over any questions affecting only individual
>>> members, and that a class action is superior to other available
>>> methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).

### A.    Numerousity

Numerousity is satisfied when the class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1); *see also Hanlon*, 150 F.3d at 1019.  "Impracticable does not mean impossible."  *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). "[N]umerosity is presumed at a level of 40 members."  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

Here, the proposed Settlement Class easily satisfies Rule 23's numerousity requirement. According to Defendant's records, the proposed Settlement Class is comprised of approximately 560,474 Michigan residents who purchased or had a subscription to a Consumer Reports Publication between April 1, 2010 and October 31, 2016.  Marchese Decl. ¶ 19.  There, is no question that joinder of all members of the Settlement Class would be impractical and numerousity is, therefore, satisfied.

### B.    Commonality

The second requirement for certification mandates that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Commonality is satisfied when the claims depend on a common contention, the resolution of which will bring a class-wide resolution of the

claims. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011).  The purpose of the commonality requirement is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Although the claims need not be identical, they must share common questions of fact or law.  *Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153-54 (2d Cir. 1983).  There must be a "unifying thread" among the claims to warrant class certification.  *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986).  Courts construe the commonality requirement liberally.  *Frank*, 228 F.R.D. at 181 (citing *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198-99 (S.D.N.Y. 1992)).

Here, Plaintiff alleges that the common contention on which the claims of all class members depends is that Defendant disclosed each of its customers' protected personal reading information to third parties in violation of the PPPA.  Plaintiff contends that determination of the truth or falsity of this contention can be made on a class wide basis and will resolve an issue – the key issue in the case – central to each class member's claims at once.

Determining the truth or falsity of this common contention raises numerous common questions that track the elements of a PPPA claim.  Numerous courts – including this Court – considering settlement classes in the context of PPPA claims have agreed. *See, e.g.*,  *Taylor*, 7:16-cv-01812, Dkt. 75 at ¶ 10 (S.D.N.Y. Oct. 17, 2017); *Kinder v. Meredith Corp.*, 2016 WL 454441, at *1 (E.D. Mich. Feb. 5, 2016).  Plaintiff contends that the central factual and legal questions in the case can be determined on a class-wide basis using the same evidence regarding Defendant's practices.  *See Coulter-Owens v. Time, Inc.*, 308 F.R.D. 524, 532–534 (E.D. Mich. 2015) (finding PPPA litigation against another magazine publisher was "driven by issues that are common to the entire putative class").

Several federal courts have similarly held that cases like this one – in which defendants are accused of uniformly disclosing information protected by a privacy statute – raise common issues of fact or law. *See, e.g., Coulter-Owens*, 308 F.R.D. at 532–534; *Parker v. Time Warner Entertainment Co.*, 239 F.R.D. 318, 329-30 (E.D.N.Y. 2007) (commonality established where "the claims are derived from the same legal theory and based upon the same factual question – whether class members were injured because of [defendant's] disclosure of their [statutorily protected information] without properly notifying them of that practice").

Given that there are multiple questions of law and fact common to members of the Settlement Class, the commonality requirement is satisfied.

### C.  Typicality

The next requirement – typicality – requires that a class representative has claims that are typical of those of the putative class members.  Fed. R. Civ. P. 23(a)(2).  Typicality is met here. "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182; *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982).  Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (internal quotations omitted). "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiff and the class. *Robidoux*, 987 F.2d at 936-37.  Courts evaluate typicality "with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *Trinidad v. Breakaway Courier Sys., Inc.*, 2007 WL 103073, at *6 (S.D.N.Y. Jan. 12, 2007) (quoting *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996)).

18

Here, Plaintiff alleges that Defendant's disclosure of his subscription is not a one-off situation unique to him, but rather part of Defendant's alleged business of disclosing its customers' subscription information to third parties without consent.  Compl. ¶¶ 1-4, 7-8, 42-48.  It is Plaintiff's contention that no matter the person – whether it be Plaintiff or other members of the putative class – the disclosures are alleged to be made in the exact same manner and for the exact same purpose.  And, because Plaintiff alleges that such conduct violates the PPPA, which provides identical statutory damages to all members of the Settlement Class, his claims are typical of the other putative class members.  Accordingly, by pursuing his own claims in this matter, Plaintiff will necessarily advance the interests of the Settlement Class, and typicality is therefore satisfied.  *See, e.g.*, *Taylor*, 7:16-cv-01812, Dkt. 75 at ¶ 10; *Coulter-Owens*, 308 F.R.D. at 534–35; *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565-66 (S.D.N.Y. 2014) (Rakoff, J.) (holding that the typicality requirement was satisfied where "the lead plaintiffs' and other class members' claims ar[o]se out of the same course of conduct by the defendant and [were] based on the same legal theories").

> **D.     Adequacy Of The Named Plaintiff**

The final Rule 23(a) prerequisite requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement exists to ensure that the class representatives will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'"  *Toure v. Cent. Parking Sys.*, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (quoting *Denney v. Deutsche Bank AG,* 443 F.3d 253, 268 (2d Cir. 2006)).  "'[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.'"  *Dziennik v. Sealift, Inc.*, 2007 WL 1580080, at *65 (E.D.N.Y. May 29, 2007) (quoting *Martens v. Smith Barney Inc.,* 181 F.R.D. 243, 259 (S.D.N.Y. 1998)).

In this case, Plaintiff – like each and every one of the Settlement Class Members – is a Michigan customer that purchased a magazine subscription from Defendant and then allegedly had his subscription information disclosed to third parties without his consent.  Compl. ¶¶ 10, 42-48.  Thus, Plaintiff and the Settlement Class Members have the exact same interest in recovering the statutory damages to which they are entitled under the PPPA.  As such, Plaintiff does not have any interest antagonistic to those of the proposed Settlement Class and his pursuit of this litigation should be clear evidence of that.

Likewise, proposed Class Counsel – Bursor & Fisher, P.A. – has extensive experience in litigating class actions of similar size, scope, and complexity to the instant action.  Marchese Decl. ¶ 20.  Class Counsel regularly engages in major complex litigation involving consumer privacy, including recent PPPA cases such as *Taylor*, has the resources necessary to conduct litigation of this nature, and has frequently been appointed lead class counsel by courts throughout the country. (*Id.*); *see* Firm Resume of Bursor & Fisher, P.A., attached hereto as Exhibit B; *see also Ebin*, 297 F.R.D. at 566 ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims. … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five class action jury trials since 2008.").

Further, proposed Class Counsel has devoted substantial resources to the prosecution of this action by investigating Plaintiff's claims and that of the Settlement Class, aggressively pursuing those claims through motion practice, conducting both formal and informal discovery, participating in two private mediations, and ultimately, negotiating the largest PPPA settlement to date, measured by both total dollars and per class member recovery.  Marchese Decl. ¶¶ 5-19.  In sum, proposed Class Counsel have vigorously prosecuted this action and will continue to do so throughout its pendency.  *Id.*

20

Accordingly, since Plaintiff and proposed Class Counsel have demonstrated their commitment to representing the Settlement Class and neither have interests antagonistic to the Settlement Class, the adequacy requirement is satisfied.

**E.      The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)**

Rule 23(b)(3) requires that common questions of law or fact not only be present, but "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623.  That Plaintiff easily meets the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied.  *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality").

Certification under Rule 23(b)(3) will allow class members to opt out of the settlement and preserve their right to seek damages independently.  *Cf. Brown v. Title Ticor Ins. Co.*, 982 F.2d 386, 392 (9th Cir. 1992).  This approach protects class members' due process rights.  *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846-48 (1999).

**1.      Common Questions Predominate**

Rule 23(b)(3)'s predominance requirement focuses on whether the defendant's liability is common enough to be resolved on a class basis, *Dukes*, 564 U.S. at 359, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied.  *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).  The predominance requirement "is designed to determine whether 'proposed

classes are sufficiently cohesive to warrant adjudication by representation.'"  *Frank*, 228 F.R.D. at 183 (quoting *Amchem*, 521 U.S. at 623).

In this case, there allegedly was a common course of conduct engaged in by Defendant. In these circumstances, courts find, particularly for purposes of settlement that there is predominance of common questions over individual issues.  *See Taylor*, 7:16-cv-01812, Dkt. 75 at ¶ 10; *see also In re Prudential Insur. Sales Practices Litig.*, 962 F. Supp. 450, 511-512 n.45 (D.N.J. 1997) ("*Prudential I*") (citing numerous other cases).

### 2.    A Class Action Is A Superior Mechanism

The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy."  *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968).  Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).[4]

Here, Plaintiff and the Class Members have limited financial resources with which to prosecute individual actions, and Plaintiff is unaware of any individual lawsuits that have been filed by Class Members arising from the same allegations. Employing the class device here will not only achieve economies of scale for putative Class Members, but will also conserve the resources of the judicial system and preserve public confidence in the integrity of the system by avoiding the expense of repetitive proceedings and preventing inconsistent adjudications of

---

[4] Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement.  *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement."). Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule."  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 140 (internal quotation marks omitted).

similar issues and claims.  *See Hanlon*, 150 F.3d at 1023.  A class action is the most suitable mechanism to fairly, adequately, and efficiently resolve the putative settlement class members' claims.

## III.   PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint counsel … [who] must fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).  In making this determination, the Court considers proposed Class Counsel's:  (1) work in identifying or investigating the potential claim, (2) experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (3) knowledge of the applicable law, and (4) resources that it will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

As discussed above, proposed Class Counsel has extensive experience in prosecuting consumer class actions in general, and privacy class actions specifically, including pursuant to the PPPA.  *See supra*, at 20-21.  And as a result of its zealous efforts in this case, proposed Class Counsel has secured the largest PPPA settlement to date, measured by both total dollars and per class member recovery.  Thus, the Court should appoint Bursor & Fisher, P.A. as Class Counsel.

## IV.   THE PROPOSED NOTICE PLAN SHOULD BE APPROVED

### A.   The Content Of The Proposed Class Notice Complies With Rule 23(c)(2).

The content of the Proposed Notice, which is attached to the Settlement Agreement as Exhibits B-D, fully complies with due process and Fed. R. Civ. P. 23.  Pursuant to Rule 23(c)(2)(B), the notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and

23

> how members may elect to be excluded; and the binding effect of a
> class judgment on class members under Rule 23(c)(3).

The content of the proposed Notice satisfies each of these requirements.  *See Taylor*, 7:16-cv-

01812, Dkt. 75 at ¶ 12.  Here, the Notice provides detailed information about the Settlement,

including: (1) a comprehensive summary of its terms; (2) Class Counsel's intent to request

attorneys' fees, reimbursement of expenses, and an incentive award for the Named Plaintiff; and

(3) detailed information about the Released Claims.  Agreement Exhibits B-D.  In addition, the

Notice provides information about the Fairness Hearing date, the right of Class Members to seek

exclusion from the Class or to object to the proposed Settlement (as well as the deadlines and

procedure for doing so), and the procedure to receive additional information.  *Id.*  In short, the

Notice Plan is intended to fully inform Class Members of the lawsuit, the proposed Settlement,

and the information they need to make informed decisions about their rights.  The very detailed

information in this proposed notice goes well beyond the requirements of the Federal Rules.

## B.      The Plan For Distribution Of The Class Notice Complies With Rule 23(c)(2)

The Parties have agreed upon a multi-part notice plan that easily satisfies the

requirements of both Rule 23 and Due Process.  First, the Settlement Administrator will send

direct notice by email to all Settlement Class Members for whom a valid email address is

identified in Defendant's records.  Agreement ¶ 4.1(b); *see also* Ex. B.  The email will contain an

electronic link to the online claim form.  *Id.*  Next, the Settlement Administrator will send direct

notice by First Class U.S. Mail, along with a postcard claim form with prepaid return postage, to

all the Settlement Class Members who did not receive an email.  Agreement ¶ 4.1(c); *see also*

Ex. C.  Further, the Settlement Administrator will establish a Settlement Website that shall

contain the "long form notice" *see* Ex. D, as well as access to important Court documents,

upcoming deadlines, and the ability to file claim forms online.  Agreement ¶ 4.1(d).  Finally, the

Settlement Administrator will also provide notice of the Settlement to the appropriate state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715.  *Id.* ¶ 4.1(f).

In sum, the proposed methods for providing notice to the Class comports with both Rule 23 and Due Process, and thus, should be approved by the Court.  *See Taylor*, 7:16-cv-01812, Dkt. 75 at ¶ 12.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant his Motion for Preliminary Approval of the Settlement.  A Proposed Order – which is substantively identical to this Court's Order in *Taylor* – granting preliminary approval, certifying the Settlement Class, appointing Class Counsel, and approving the Proposed Notice of Settlement, is submitted herewith.

Dated:  April 9, 2018

Respectfully submitted,

By:     */s/ Joseph I. Marchese*
        Joseph I. Marchese

**BURSOR & FISHER, P.A.**
Scott A. Bursor
Joseph I. Marchese
Philip L. Fraietta
Frederick J. Klorczyk III
888 Seventh Avenue
New York, NY  10019
Telephone:  (646) 837-7150
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
        jmarchese@bursor.com
        pfraietta@bursor.com
        fklorczyk@bursor.com

*Proposed Class Counsel*