UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DON RUPPEL, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>    v.<br><br>CONSUMERS UNION OF UNITED STATES, INC.,<br><br>                              Defendant. | Civil Action No. 16-cv-02444-KMK |

### DECLARATION OF JOSEPH I. MARCHESE IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

I, Joseph I. Marchese, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

      1.      I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiff in this action. I am an attorney at law licensed to practice in the State of New York, and I am a member of the bar of this Court. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would testify competently thereto.

      2.      I make this declaration in support of Plaintiff's motion for final approval of class action settlement filed herewith.

      3.      Attached hereto as **Exhibit A** is a true and correct copy of the Parties' Class Action Settlement Agreement, and the exhibits attached thereto.

***The Litigation And Settlement History***

      4.      On April 1, 2016, Plaintiff filed his Class Action Complaint in this matter. *See* Dkt. 1.

      5.      On June 14, 2016, Defendant filed a letter requesting a premotion conference on a motion to dismiss under Rules 12(b)(1) and 12(b)(6), arguing, *inter alia*, that Plaintiff lacked

Article III standing and failed to state a claim upon which relief could be granted.  Dkt. 10.

6. On August 12, 2016 – after a premotion conference at which permission to file was granted by the Court – Defendant served a motion to dismiss under Rules 12(b)(1) and (b)(6).  Dkt. 19.

7. On September 8, 2016, Plaintiff opposed Defendant's motion to dismiss.  Dkt. 28.

8. On September 26, 2016, Defendant filed a reply in support of its motion to dismiss.  Dkt. 24.

9. On October 20, 2016, the Court held an initial scheduling conference pursuant to Fed. R. Civ. P. 16 and thereafter entered a scheduling Order.

10. On October 25, 2016, Plaintiff served his first set of document requests and interrogatories.

11. On November 18, 2016, Defendant served its first set of document requests and interrogatories.

12. In December 2016, and in January and February 2017, the Parties made substantial document productions totaling thousands of pages, including documents concerning Plaintiff's magazine subscription information, Defendant's contracts with data companies to whom it allegedly disclosed Plaintiff's magazine subscription information, and Defendant's purported notices in its magazine which Defendant contends informed Plaintiff of these disclosures.

13. The Parties each substantially completed their document productions by February 16, 2017.

14. Thereafter, the Parties completed deposition discovery, including depositions of the Parties and of third parties.

15. From the outset of the case, and including during the pendency of Defendant's motion to dismiss, the Parties engaged in direct communications, and as part of their obligations under Fed. R. Civ. P. 26, discussed the prospect of settlement.

16. Those discussions eventually led to an agreement between the Parties to engage in mediation, which the Parties agreed would take place before Jed Melnick, Esq., who is a neutral affiliated with JAMS New York.

17. On July 31, 2017, the Court held a status conference at which the Parties informed the Court that Phase I discovery had been completed, and that they intended to engage in a mediation with Mr. Melnick.

18. The mediation with Mr. Melnick took place on August 28, 2017 at JAMS's offices in New York and lasted approximately seven hours. While the Parties engaged in good faith negotiations, which at all times were at arms' length, they failed to reach an agreement.

19. On October 20, 2017, the Parties filed premotion letters in support of their motions for summary judgment. *See* Dkts. 77 & 79.

20. On October 27, 2017, the Parties filed responses to their respective letters. *See* Dkts. 81 & 83.

21. On December 5, 2017, after the Parties had filed and responded to premotion letters in support of their motions for summary judgment, the Court held a premotion conference, granted both Parties permission to file motions for summary judgment, and set a briefing schedule. *See* Dkt. 91.

22. On February 9, 2018, the Parties served their motions for summary judgment and supporting documents.

23. Shortly thereafter, the Parties agreed to participate in a second mediation, which

the Parties agreed would take place before former U.S. Magistrate Judge Frank Maas (of the District Court for the Southern District of New York), who is a neutral affiliated with JAMS New York.

24. On February 21, 2018, the Parties participated in a full-day mediation with Judge Maas at JAMS's offices in New York. While the Parties engaged in good faith negotiations, which at all times were at arms' length, they were unable to reach an agreement that day. But the Parties agreed to continue their settlement negotiations at the conclusion of the mediation.

25. In the weeks following the mediation session, the Parties continued to engage in settlement negotiations and ultimately reached an agreement.

26. The resulting $16.375 million Proposed Settlement secures extraordinary relief for the class, and, measured by both total dollars and per class member recovery, is the largest ever reached in a Michigan Preservation of Personal Privacy Act (the "PPPA") case. Based on Defendant's records the proposed Settlement Class includes approximately 582,212 persons with a Michigan street address who between April 1, 2010 and October 31, 2016, purchased or had a subscription to a Consumer Reports Publication. With a $16.375 million non-reversionary Settlement Fund, and based on class action claims rates that have been experienced in similar cases (including in *Taylor v. Trusted Media Brands, Inc.*, 7:16-cv-01812-KMK (S.D.N.Y.)), Class Counsel estimates that each claimant should receive approximately $180.

***Factors Supporting Final Approval***

27. The Parties agreed to the terms of the Settlement through experienced counsel who possessed all the information necessary to evaluate the case, determine all the contours of the proposed class, and reach a fair and reasonable compromise after negotiating the terms of the Settlement at arms' length and with the assistance of a neutral mediator.

28.     Plaintiff and Class Counsel recognize that despite our belief in the strength of Plaintiff's claims, and Plaintiff's and the Class' ability to ultimately each secure a $5,000 statutory award under the PPPA, the expense, duration, and complexity of protracted litigation would be substantial and the outcome of trial uncertain.

29.     Plaintiff and Class Counsel are also mindful that absent a settlement, the success of Defendant's various defenses in this case could deprive the Plaintiff and the Settlement Class Members of any potential relief whatsoever.  Defendant is represented by highly experienced attorneys who have made clear that absent a settlement, they were prepared to continue their vigorous defense of this case, including by moving for summary judgment.  Plaintiff and Class Counsel are also aware that Defendant would continue to challenge liability and the constitutionality of the PPPA, as well as assert a number of defenses.  Consumer Reports has indicated that it would continue to assert numerous defenses on the merits, including that the PPPA does not prohibit the disclosure of the magazine information at issue at all.  More specifically, Plaintiff is aware that Defendant would continue to assert a number of defenses on the merits, including that the PPPA neither prohibits the disclosure of the magazine subscriptions information at issue (because the recipients of the disclosures are its agents), nor applies to Defendant at all because it is not engaged in the business of selling magazines "at retail," as is required to come under the scope of the statute.  Defendant will also continue to challenge Plaintiff's standing, and the constitutionality of the PPPA, as well as its applicability to magazines in particular and the magazine publishing industry in general.  Looking beyond trial, Plaintiff is also keenly aware of the fact that Defendant could appeal the merits of any adverse decision, and that in light of the statutory damages in play it would attempt to argue – in both the trial and appellate courts – for a reduction of damages based on due process concerns.

30. Plaintiff and Class Counsel believe that the relief provided by the settlement weighs heavily in favor of a finding that the settlement is fair, reasonable, and adequate, and well within the range of approval.

31. On July 27, 2018, the Court granted Plaintiff's Motion For Preliminary Approval. *See* Dkt. 99.

32. Since the Court granted preliminary approval, Plaintiff has worked with the Settlement Administrator, JND Legal Administration ("JND"), to carry out the Court-ordered notice plan. As detailed in the accompanying Declaration of Jennifer M. Keough, of JND, the Court-ordered notice plan has been carried out in its entirety.

33. Attached hereto as **Exhibit B** is a current firm resume for Bursor & Fisher, P.A.

34. My firm, Bursor & Fisher, P.A., has significant experience in litigating class actions of similar size, scope, and complexity to the instant action. (*See* Ex. B; Firm Resume of Bursor & Fisher, P.A.). We were Class Counsel in *Moeller v. American Media, Inc.*, Case No. 16-cv-11367-JEL (E.D. Mich.), a case brought under the PPPA wherein we reached a class-wide settlement for $7.6 million. We were also Class Counsel in *Taylor v. Trusted Media Brands, Inc.*, Case No. 16-cv-01812-KMK (S.D.N.Y.), a case brought under the PPPA wherein we reached a class-wide settlement for $8.225 million. Additionally, we are counsel for plaintiffs in two other PPPA putative class actions pending in the Southern District of New York, wherein we reached proposed class-wide settlements which are pending preliminary approval. *See Edwards v. Hearst Communications, Inc.*, Case No. 15-cv-09279-AT (S.D.N.Y.) at Dkt. 289 (motion for preliminary approval of $50 million class-wide settlement); *Moeller v. Advance Magazine Publishers, Inc., d/b/a Condé Nast*, Case No. 15-cv-05671-NRB (S.D.N.Y.) at Dkt. 122 (motion for preliminary approval of $13.75 million class-wide settlement).

35. Additionally, my firm has also been recognized by courts across the country for its expertise. (*See* Ex. B); *see also Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. Feb. 25, 2014) (Rakoff, J.) ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims. … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five class action jury trials since 2008."); *In re Michaels Stores Pin Pad Litigation*, Civil Action No. 11-cv-03350, Dkt. 22 (N.D. Ill. June 8, 2011) (appointing Bursor & Fisher class counsel to represent a putative nationwide class of consumers who made in-store purchases at Michaels using a debit or credit card and had their private financial information breached as a result).

36. Based on Class Counsel's experience litigating similar consumer class actions, including those alleging PPPA violations as described above, Class Counsel is of the opinion that the Settlement is fair, reasonable, and adequate.

37. As discussed above and throughout Plaintiff's Motion for Final Approval of Class Action Settlement, the Settlement reached in this case was the product of negotiations conducted at arms' length by experienced counsel representing adversarial parties, and there is absolutely no evidence of fraud or collusion.

38. Attached hereto as **Exhibit C** is a true and correct copy of the transcript from the January 31, 2018 Final Approval Hearing in *Taylor v. Trusted Media Brands, Inc.*, Case No. 16-cv-01812-KMK (S.D.N.Y.).

I declare under penalty of perjury that the above and foregoing is true and accurate.

Executed this 17th day of October 2018 at New York, New York.

                                                  _/s Joseph I. Marchese_
                                                      Joseph I. Marchese