**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

DON RUPPEL, individually and on behalf of all others similarly situated,

               Plaintiff,

   v.

CONSUMERS UNION OF UNITED STATES, INC.,

               Defendant.

Civil Action No. 16-cv-02444-KMK

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Dated: October 17, 2018

**BURSOR & FISHER, P.A.**

Scott A. Bursor
Joseph I. Marchese
Philip L. Fraietta
888 Seventh Avenue
New York, NY  10019
Telephone:  (646) 837-7150
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
       jmarchese@bursor.com
       pfraietta@bursor.com

Frederick J. Klorczyk III
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700
Email:  fklorczyk@bursor.com

*Class Counsel*

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ................................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.......................................................... 2

    A.    Michigan's Preservation Of Personal Privacy Act ........................................ 2

    B.    Plaintiff's Allegations .................................................................................... 3

    C.    The Litigation History And Settlement Discussions ..................................... 4

TERMS OF THE SETTLEMENT ....................................................................................... 6

    A.    Class Definition ............................................................................................. 6

    B.    Monetary Relief ............................................................................................. 6

    C.    Release .......................................................................................................... 6

    D.    Notice And Administration Expenses............................................................ 7

    E.    Incentive Award And Attorneys' Fees And Expenses .................................. 7

ARGUMENT ....................................................................................................................... 7

    I.    CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE........................................................................................... 7

        A.    Numerosity......................................................................................... 8

        B.    Commonality....................................................................................... 9

        C.    Typicality ......................................................................................... 10

        D.    Adequacy ......................................................................................... 11

        E.    The Proposed Settlement Class Is Ascertainable........................................ 13

        F.    The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)..................................................................................... 13

            1.    Common Questions Predominate .................................... 13

            2.    A Class Action Is A Superior Mechanism For Adjudication................................................................... 14

    II.    THE NOTICE PLAN COMPORTS WITH DUE PROCESS ................................. 15

    III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT ........................... 17

    A.    The Proposed Settlement Is Procedurally Fair........................................... 17

    B.    The Proposed Settlement Is Substantively Fair .......................................... 18

        1.    Litigation Through Trial Would Be Complex, Costly, And Long (*Grinnell* Factor 1)...................................... 19

        2.    The Reaction Of The Class Is Overwhelmingly Positive (*Grinnell* Factor 2) ................................................ 21

        3.    Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3) ...................................................................... 22

4.      The Continued Litigation Risks Related To Establishing
        Liability, Damages, And Maintaining A Class Action
        Through Trial Support Settlement (*Grinnell* Factors 4, 5,
        And 6) ........................................................................................................ 23

5.      Defendant Probably Could Not Withstand A Greater
        Judgment (*Grinnell* Factor 7)...................................................................... 24

6.      The Settlement Amount Is Reasonable In Light Of The
        Possible Recovery And The Attendant Risks Of Litigation
        (*Grinnell* Factors 8 And 9).......................................................................... 24

CONCLUSION.................................................................................................................... 25

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*,
   271 F. App'x 41 (2d Cir. 2008) ................................................................. 16

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ...................................................................... 13, 14

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
   133 S. Ct. 1184 (2013) ........................................................................ 14

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
   222 F.3d 52 (2d Cir. 2000) ................................................................. 11, 12

*Beckman v. Keybank, N.A.*,
   2013 WL 1803736 (S.D.N.Y. Apr. 29, 2013) ............................................. 15

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
   504 F.3d 229 (2d Cir. 2007) .................................................................... 9

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ............................................................. passim

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995) ...................................................................... 8

*Coulter-Owens v. Time, Inc.*,
   308 F.R.D. 524 (E.D. Mich. 2015) ......................................... 8, 10, 11, 14

*Dupler v. Costco Wholesale Corp.*,
   249 F.R.D. 29 (E.D.N.Y. 2008) ................................................................. 9

*Ebin v. Kangadis Food Inc.*,
   297 F.R.D. 561 (S.D.N.Y. 2014) ...................................................... 11, 12, 13

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ............................................................................ 15

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005) ...................................................... 17, 24, 25

*Gilliam v. Addicts Rehab. Ctr. Fund*,
   2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ............................................... 25

iii

*Green v. Wolf Corp.*,
406 F.2d 291 (2d Cir. 1968) ............................................................................. 11

*Hanlon v. Chrysler*,
150 F.3d 1011 (9th Cir. 1998) ........................................................................... 22

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009) .................................................. 18

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000) ...................................................... 19, 22, 23

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
2007 WL 2230177 (S.D.N.Y. July 27, 2007) .................................................... 17

*In re Google Buzz Privacy Litig.*,
2011 WL 7460099 (N.D. Cal. June 2, 2011) ........................................... 2, 4, 5, 21

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ................................................... 15

*In re MetLife Demutualization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y. 2010) ............................................................... 21

*In re Petrobas*,
862 F.3d 250 (2d Cir. 2017) ............................................................................. 13

*In re Prudential Insur. Sales Practices Litig.*,
962 F. Supp. 450 (D.N.J. 1997) ........................................................................ 14

*In re Visa Check/MasterMoney Antitrust Litig.*,
280 F.3d 124 (2d Cir. 2001) ....................................................................... 13, 14

*In re Vitamin C Antitrust Litig.*,
2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ........................................ 18, 21, 23

*Joel A. v. Giuliani*,
218 F.3d 132 (2d Cir. 2000) ............................................................................. 25

*Kinder v. Meredith Corp*,
2016 WL 454441 (E.D. Mich. Oct. 5, 2015) .................................................. 9, 14

*Krueger v. N.Y. Tel. Co.*,
163 F.R.D. 433 (S.D.N.Y. 1995) ........................................................................ 9

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) ......................................................................... 2, 21

*Marisol A. v. Giuliani,*
  126 F.3d 372 (2d Cir. 1997) ............................................................................. 8, 10

*Massiah v. MetroPlus Health Plan, Inc.,*
  2012 WL 5874655 (E.D.N.Y. 2012) ...................................................................... 22

*McBean v. City of New York,*
  228 F.R.D. 487 (S.D.N.Y. 2005) .......................................................................... 14

*McReynolds v. Richards-Cantave,*
  588 F.3d 790 (2d Cir. 2009) ................................................................................. 18

*Michalow v. E. Coast Restoration & Consulting Corp.,*
  2011 WL 6942023 (E.D.N.Y. Nov. 17, 2011) ......................................................... 9

*Monaco v. Stone,*
  187 F.R.D. 50 (E.D.N.Y. 1999) .............................................................................. 9

*Morris v. Affinity Health Plan,*
  859 F. Supp. 2d 611 (S.D.N.Y. 2012) ................................................................... 15

*Newman v. Stein,*
  464 F.2d 689 (2d Cir. 1972) ................................................................................. 24

*PaineWebber,*
  171 F.R.D. 104 (S.D.N.Y. 1997) .......................................................................... 23

*Parker v. Time Warner Entertainment Co.,*
  239 F.R.D. 318 (E.D.N.Y. 2007) .......................................................................... 10

*Robidoux v. Celani,*
  987 F.2d 931 (2d Cir. 1993) ....................................................................... 8, 10, 11

*Rossini v. Ogilvy & Mather, Inc.,*
  798 F.2d 590 (2d Cir. 1986) ................................................................................. 13

*Supnick v. Amazon.com, Inc.,*
  2000 WL 1603820 (W.D. Wash. May 18, 2000) .................................................... 10

*TBK Partners, Ltd. v. Western Union Corp.,*
  517 F. Supp. 380 (S.D.N.Y. 1981) ........................................................................ 19

*Teachers' Ret. Sys. Of Louisiana v. A.C.L.N. Ltd.,*
  2004 WL 2997957 (S.D.N.Y. May 14, 2004) ......................................................... 25

*Tiro v. Public House Invs., LLC,*
  2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013) ....................................................... 17

*Torres v. Gristede's Oper. Corp.*,
  2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010).................................................................. 22

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ................................................................................ 16, 17

*Weigner v. City of N.Y.*,
  852 F.2d 646 (2d Cir. 1988)..................................................................................... 16

*Willix v. Healthfirst, Inc.*,
  2011 WL 7584862 (E.D.N.Y. Feb. 18, 2011) ........................................................... 23

*Yang v. Focus Media Holding Ltd.*,
  2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ........................................................... 14

*Yuzary v. HSBC Bank USA, N.A.*,
  2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ............................................................. 15

## STATUTES

Michigan Preservation of Personal Privacy Act,
  M.C.L. §§ 445.1711-1715 ................................................................................ passim

## RULES

Fed. R. Civ. P. 16 ......................................................................................................... 4

Fed. R. Civ. P. 23 ................................................................................................. passim

## OTHER AUTHORITIES

Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* (4th ed. 2002).......................... 18

## INTRODUCTION

On July 27, 2018, this Court preliminarily approved the Class Action Settlement between Plaintiff Don Ruppel ("Plaintiff") and Defendant Consumers Union of United States, Inc. ("Defendant" or "Consumer Reports") and directed that notice be sent to the Settlement Class. Dkt. 99.  The settlement administrator, JND Legal Administration ("JND") has implemented the Court-approved notice plan and direct notice has reached 97% of the certified Settlement Class. The reaction from the Class has been overwhelmingly positive, which is not surprising given that this Settlement provides the largest expected class member recovery ever in a case under Michigan's Preservation of Personal Privacy Act ("PPPA"), M.C.L. §§ 445.1711-1715. Specifically, of the approximately 582,212[1] Settlement Class Members, zero objected, and only 12 requested to be excluded.[2]  As of October 12, 2018, 28,999 class members (or approximately 5%) filed claims, and that number will continue to grow as Settlement Class Members have until January 17, 2019 to file claims.  Thus, the Court should have no hesitation in granting final approval to the unopposed Settlement.

The Settlement provides for the largest expected class member recovery ever in a PPPA case, which Class Counsel estimates will be approximately $180 per claimant.  The Settlement creates a non-reversionary $16.375 million common fund, which will be used to pay all approved claims by Settlement Class Members, notice and administration expenses, a Court-approved incentive award to Plaintiff, and attorneys' fees, costs, and expenses to proposed Class Counsel to the extent awarded by the Court.

The $16.375 million cash fund exceeds the other settlement amounts finally approved by

---

[1] The number of class members was initially estimated as approximately 560,474 persons. Defendant provided JND with a list of 583,106 persons that resulted in a list containing 582,212 members of the Settlement Class after duplicates were removed.  *See* Declaration of Jennifer M. Keough Regarding Settlement Administration ("Keough Decl.") ¶¶ 7-8.

[2] The deadline to object or opt-out of the Settlement was October 4, 2018.  *See* Dkt. 99 ¶¶ 16, 21.

this Court, and others, in the five prior PPPA class actions. *See Taylor v. Trusted Media Brands, Inc.*, 7:16-cv-01812-KMK, Dkt. 87 (S.D.N.Y. Feb. 1, 2018) (granting final approval to a settlement that created an $8.225 million cash fund); *Halaburda v. Bauer Publishing Co.*, 2:12-cv-12831-GCS, Dkt. 68 (E.D. Mich. Jan. 6, 2015) (granting final approval to a settlement that created a $775,000 cash fund); *Coulter-Owens v. Rodale, Inc.*, 1:14-cv-11284-RHC, Dkt. 54 (E.D. Mich. Sept. 29, 2016) (granting final approval to a settlement that created a $4.5 million cash fund); *Kinder v. Meredith Corp.*, 1:14-cv-11284-TLL, Dkt. 72 (E.D. Mich. Oct. 5, 2015) (granting final approval to a settlement that created a $7.5 million cash fund); *Moeller v. American Media Inc.*, 5:16-cv-11367-JEL, Dkt. 42 (E.D. Mich. Sept. 28, 2017) (granting final approval to a settlement that created a $7.6 million cash fund).

Moreover, when compared to approved settlements of cases alleging violations of similar privacy statutes – which typically offer no monetary relief to the class whatsoever – the fairness, reasonableness, and adequacy of the instant Settlement becomes even more apparent. *See, e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 820-22 (9th Cir. 2012) *cert. denied*, 134 S. Ct. 8 (2013) (approving a settlement of federal Video Privacy Protection Act ["VPPA"] claims with $9.5 million to *cy pres* as the sole form of monetary relief); *In re Netflix Privacy Litig.*, No. 5:11-cv-00379, Dkt. 256 (N.D. Cal. March 18, 2013) (approving $9 million *cy pres* settlement of VPPA claims); *In re Google Buzz Privacy Litig.*, 2011 WL 7460099, at *3 (N.D. Cal. June 2, 2011) (approving $8.5 million *cy pres* settlement).

For these reasons, and as explained further below, the Settlement is fair, reasonable, and adequate, and warrants this Court's final approval.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.   Michigan's Preservation Of Personal Privacy Act

The Michigan legislature passed the PPPA "to preserve personal privacy with respect to

2

the purchase, rental, or borrowing of written materials, sound recordings, and video recordings."

M.C.L. § 445.1712.  As such, the PPPA provides that:

> a person, or an employee or agent of the person, engaged in the business of selling at retail . . . books or other written materials . . . shall not disclose to any person, other than the customer, a record or information concerning the purchase . . . of those materials by a customer that indicates the identity of the customer.

M.C.L. § 445.1712.

To enforce the statute, the PPPA authorizes civil actions and provides for the recovery of statutory damages in the amount of $5,000, plus costs and reasonable attorney fees.  *See* M.C.L. § 445.1715.

### B.   Plaintiff's Allegations

Consumer Reports is a non-profit company that publishes *Consumer Reports* and other magazines in the United States.  *See* Plaintiff's Class Action Complaint, Dkt. No. 1 ["Compl."], ¶¶ 1 n.1, 11.  Plaintiff alleges that Consumer Reports sells information related to its customers' magazine subscription histories and personal reading habits.  *Id.* ¶¶ 1-4, 8, 42-48.  To increase the value of such information, Plaintiff alleges that Consumer Reports trades its customers' protected reading information with certain third parties – including data mining companies – in exchange for other demographic and lifestyle data that such companies have already gathered (or "mined") on each subscriber.  *Id.* ¶¶ 7, 42.  Plaintiff further alleges that Consumer Reports thereafter "enhances" its own customer profiles with this additional data (*e.g.*, income levels, religion, age, race, political affiliation, travel habits, medical conditions, etc.), and then sells the enhanced information to other unrelated third parties for a profit.  *Id.* ¶¶ 7-8, 43-44.

Plaintiff further alleges that no matter how consumers subscribe (*i.e.*, via postcard, over the phone, on Consumer Reports' website, or through a subscription agent's website), Consumer Reports' customers never provide consent to disclose information related to their magazine subscriptions to third parties.  *Id.* ¶¶ 9, 45-46, 48.  This is because – during the subscription

3

process – Plaintiff claims that customers are not required to consent to any terms or policies informing them of Consumer Reports' disclosure practices.  *Id.*  Likewise, even after subscribing, Plaintiff alleges that Consumer Reports fails to notify customers that it will disclose their protected reading information to third parties.  *Id.*  Nonetheless, Consumer Reports allegedly discloses all of their customers' protected reading information to various third parties, without any consent.  *Id.* ¶¶ 7-9, 45-46, 48.

### C.   The Litigation History And Settlement Discussions

Plaintiff filed his class action lawsuit on April 1, 2016 in the United States District Court for the Southern District of New York.  *See* Declaration of Joseph I. Marchese In Support Of Plaintiff's Motion For Final Approval Of Class Action Settlement ("Marchese Decl.") ¶ 4.  In response to the complaint, on June 14, 2016, Consumer Reports filed a letter requesting a premotion conference on a motion to dismiss under Rules 12(b)(1) and 12(b)(6), arguing, *inter alia*, that Plaintiff lacked Article III standing and failed to state a claim upon which relief could be granted.  *Id.* ¶ 5.  On August 12, 2016 – after a premotion conference at which permission to file was granted by the Court – Consumer Reports served a motion to dismiss under Rules 12(b)(1) and (b)(6).  *Id.* ¶ 6.  On September 8, 2016, Plaintiff opposed Consumer Reports' motion to dismiss.  *Id.* ¶ 7.  On September 26, 2016, Consumer Reports filed a reply in support of its motion to dismiss.  *Id.* ¶ 8.

On October 20, 2016, the Court held an initial scheduling conference pursuant to Fed. R. Civ. P. 16 and thereafter entered a Scheduling Order.  *Id.* ¶ 9.  The Parties then conducted substantial written discovery, document discovery, and deposition discovery on the merits of the case, which included the production and review of thousands of pages of documents, and several meet and confer conferences.  *Id.* ¶¶ 10-12.  The Parties each substantially completed their document productions by February 16, 2017.  *Id.* ¶ 13.  And thereafter, completed deposition

4

discovery, including depositions of the Parties and of third parties.  *Id.* ¶ 14.

On June 12, 2017, the Court issued an order denying Consumer Reports' motion to dismiss.  Dkt. 68.  On July 31, 2017, the Court held a status conference at which the Parties informed the Court that Phase I discovery had been completed, and that they intended to engage in a mediation with Jed Melnick, Esq. of JAMS NY.  *See* Marchese Decl. ¶ 17.  On August 28, 2017, the Parties participated in a full day mediation with Mr. Melnick at JAMS's offices in New York.  *Id.* ¶ 18.  While the Parties engaged in good faith negotiations, which at all times were at arms' length, they failed to reach an agreement.  *Id.*

On October 20, 2017, the Parties filed premotion letters in support of their motions for summary judgment.  *Id.* ¶ 19.  And on October 27, 2017, the Parties filed responses to their respective letters.  *Id.* ¶ 20.  Thereafter, on December 5, 2017, the Court held a premotion conference, granted both Parties permission to file motions for summary judgment, and set a briefing schedule.  *Id.* ¶ 21.

On February 9, 2018, the Parties served their motions for summary judgment and supporting documents.  *Id.* ¶ 22.  Shortly thereafter, the Parties agreed to participate in a second mediation, which they agreed would take place before Ret. U.S. Magistrate Judge Frank Maas (formerly of the District Court for the Southern District of New York), who is a neutral affiliated with JAMS New York.  *Id.* ¶ 23.

On February 21, 2018, the Parties participated in a full-day mediation with Judge Maas at JAMS's offices in New York.  *Id.* ¶ 24.  While the Parties engaged in good faith negotiations, which at all times were at arms' length, they were unable to reach an agreement that day.  *Id.* But the Parties agreed to continue their negotiations at the conclusion of the mediation.  *Id.*

In the weeks following the mediation session, the Parties continued to engage in settlement negations and ultimately reached an agreement.  *Id.* ¶ 25.  The Court granted

preliminary approval to that Settlement on July 27, 2018.  *See* Dkt. 99.

## TERMS OF THE SETTLEMENT

The key terms of the Settlement Agreement ("Agreement" or "Settlement"), attached to the Marchese Declaration as Exhibit A, are briefly summarized as follows:

### A.    Class Definition

As part of preliminary approval, the Court provisionally certified a class for settlement purposes of:  "all Persons with a Michigan street address who between April 1, 2010 and October 31, 2016, purchased or had a subscription to a Consumer Reports Publication."  Dkt. 99 ¶ 9; Agreement ¶ 1.31.[3]

### B.    Monetary Relief

Consumer Reports will cause to be established a $16.375 million non-reversionary Settlement Fund, from which each Settlement Class Member who submits a valid claim shall be entitled to a *pro rata* portion after payment of notice and administrative expenses, attorneys' fees, and an incentive award to the Class Representative.  Agreement ¶¶ 1.33, 2.1.  No portion of the Settlement Fund will revert back.  *Id.* ¶ 2.1.  Individual cash payments are estimated to be approximately $180.

### C.    Release

In exchange for the relief described above, Consumer Reports and each of its related and affiliated entities as well as all "Released Parties" as defined in ¶ 1.27 of the Settlement will receive a full release of all claims arising out of or related to Consumer Reports' disclosure of its Michigan customers' magazine subscription information.  *See id.* ¶¶ 1.26-1.28.

---

[3] Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this Action and members of their families; (2) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons.

### D.    Notice And Administration Expenses

Consumer Reports has caused to be paid, and will continue to cause to be paid, all notice and administration expenses out of the Settlement Fund.  *Id.* ¶¶ 1.29, 1.33.

### E.    Incentive Award And Attorneys' Fees And Expenses

In recognition for his efforts on behalf of the Settlement Class, Consumer Reports has agreed that Plaintiff Ruppel may receive, subject to Court approval, an incentive award of $7,500 from the Settlement Fund, as appropriate compensation for his time and effort serving as Class Representative and as a party to the Action.  *Id.* ¶¶ 1.33, 8.3.  Consumer Reports has also agreed that the Settlement Fund may also be used to pay Class Counsel reasonable attorneys' fees and to reimburse costs and expenses in this Action, in an amount to be approved by the Court.  *Id.* ¶¶ 1.33, 8.1.  These awards are subject to this Court's approval, which Plaintiff has moved for separately.  *See* Dkt. 101.  That motion is unopposed.

## ARGUMENT

## I.    CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE

The Court's Preliminary Approval Order provisionally certified a class for settlement purposes of: "all Persons with a Michigan street address who between April 1, 2010 and October 31, 2016, purchased or had a subscription to a Consumer Reports Publication."  Dkt. 99 ¶ 9 (the "Settlement Class").

Under Federal Rule of Civil Procedure 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  Rule 23(b)(3)

requires the Court to find that:

> questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).  In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification. *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) (internal citation omitted).

The  Court should now grant final certification because the Settlement Class meets all of the requirements of Rule 23(a) and Rule 23(b)(3).  *See Coulter-Owens v. Time, Inc.*, 308 F.R.D. 524 (E.D. Mich. 2015) (granting plaintiff's motion for class certification of a PPPA claim against another magazine publisher); Marchese Decl. Ex. C, 1/31/18 *Trusted Media Brands* Final Approval Hearing Transcript ("*TMBI* Hearing Tr.") at 9:2-4 (certifying class for purposes of PPPA settlement).

### A.      Numerosity

Numerosity is satisfied when "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  For purposes of Rule 23(a)(1), "[i]mpracticable does not mean impossible."  *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).  "[N]umerosity is presumed at a level of 40 members."  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

Here, the Settlement Class easily satisfies Rule 23's numerosity requirement.  According to Defendant's records, the Settlement Class is comprised of approximately 582,212 persons with a Michigan street address who purchased or had a subscription to a Consumer Reports Publication between April 1, 2010 and October 31, 2016.  Marchese Decl. ¶ 26.  There is no question that joinder of all members of the Settlement Class would be impractical and numerosity is, therefore, satisfied.

8

### B.  Commonality

Rule 23(a)(2) requires that a plaintiff establish that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  This commonality requirement is met "if plaintiffs' grievances share a common question of law or of fact."  *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007).  The disputed issue of law or fact must "occupy essentially the same degree of centrality to the named plaintiffs' claim as to that of other members of the proposed class."  *Krueger v. N.Y. Tel. Co.*, 163 F.R.D. 433, 442 (S.D.N.Y. 1995) (internal quotations omitted).  "[A] single common issue of law will satisfy the commonality requirement."  *Michalow v. E. Coast Restoration & Consulting Corp.*, 2011 WL 6942023, at *3 (E.D.N.Y. Nov. 17, 2011); *Monaco v. Stone*, 187 F.R.D. 50, 61 (E.D.N.Y. 1999).  A common issue of law will be found if plaintiffs "identify some unifying thread among the members' claims."  *Monaco*, 187 F.R.D. at 61 (internal quotations omitted).  A court may find a common issue of law even if there is "some factual variation among class members' specific grievances."  *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 37 (E.D.N.Y. 2008).

Here, Plaintiff alleges that the common contention on which the claims of all Class Members depends is that Defendant disclosed each of its customers' protected personal reading information to third parties in violation of the PPPA.  Plaintiff contends that determination of the truth or falsity of this contention can be made on a class wide basis and will resolve an issue – the key issue in the case – central to each class member's claims at once.

Determining the truth or falsity of this common contention raises common questions that track the elements of a PPPA claim.  Numerous courts – including this Court – considering settlement classes in the context of PPPA claims have agreed.  *See, e.g.*, *TMBI* Hearing Tr. at 6:11-15; *Moeller*, 5:16-cv-11367-JEL, Dkt. 42; *Kinder*, 2016 WL 454441, at *1; *Halaburda*, No.

2:12-cv-12831-GCS, Dkt. 68.  Moreover, the only court to consider a contested motion for class

certification under the PPPA certificated the class.  *See Coulter-Owens*, 308 F.R.D. at 532-34

(finding PPPA litigation against another magazine publisher was "driven by issues that are

common to the entire putative class").

Several federal courts have similarly held that cases like this one – in which defendants

are accused of uniformly disclosing information protected by a privacy statute – raise common

issues of fact or law.  *See, e.g.*, *Parker v. Time Warner Entertainment Co*., 239 F.R.D. 318, 329-

30 (E.D.N.Y. 2007) (commonality established where "the claims are derived from the same legal

theory and based upon the same factual question – whether class members were injured because

of [defendant's] disclosure of their [statutorily protected information] without properly notifying

them of that practice"); *Supnick v. Amazon.com, Inc*., 2000 WL 1603820, at *1 (W.D. Wash.

May 18, 2000) (finding commonality established where the defendants allegedly disclosed

personal information without consent).

Given that there are multiple questions of law and fact common to members the

Settlement Class, the commonality requirement is satisfied.

## C.  Typicality

Rule 23(a)(3) requires that "each class member's claim arises from the same course of

events, and each class member makes similar legal arguments to prove the defendant's liability."

*Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotation marks

omitted).  Typicality is satisfied "when each class member's claim arises from the same course

of events and each class member makes similar legal arguments to prove the defendant's

liability."  *Robidoux*, 987 F.2d at 936.  "When it is alleged that the same unlawful conduct was

directed at or affected both the named plaintiff and the class sought to be represented, the

typicality requirement is usually met irrespective of minor variations in the fact patterns

underlying individual claims." *Id.* at 936-37; *see also Green v. Wolf Corp.*, 406 F.2d 291, 300 (2d Cir. 1968) (stating denial of class certification "because all of the allegations of the class do not fit together like pieces in a jigsaw puzzle … would destroy much of the utility of Rule 23").

Here, Plaintiff alleges that Defendant's disclosure of his subscription is not a one-off situation unique to him, but rather, part of Defendant's alleged business of disclosing its customers' subscription information to third parties without consent.  Compl. ¶¶ 1-4, 7-10, 42-48.  It is Plaintiff's contention that no matter the person – whether it be Plaintiff or other members of the Settlement Class – the disclosures are alleged to be made in the exact same manner and for the exact same purpose.  And, because Plaintiff alleges that such conduct violates the PPPA, which provides identical statutory damages to all members of the Settlement Class, his claims are typical of the other Settlement Class Members.  Accordingly, by pursuing his own claims in this matter, Plaintiff will necessarily advance the interests of the Settlement Class, and typicality is therefore satisfied.  *See, e.g.*, *TMBI* Hearing Tr. at 6:15-16; *Coulter-Owens*, 308 F.R.D. at 534-35; *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565-66 (S.D.N.Y. 2014) (Rakoff, J.) (holding that the typicality requirement was satisfied where "the lead plaintiffs' and other class members' claims ar[o]se out of the same course of conduct by the defendant and [were] based on the same legal theories").

### D.    Adequacy

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Generally, adequacy of representation entails inquiry as to whether:  1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced, and able to conduct the litigation."  *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Both of these factors are met here.

In this case, Plaintiff – like each and every one of the Settlement Class Members – has a Michigan street address and purchased a subscription from Defendant and then allegedly had his subscription information disclosed to third parties without consent.  Compl. ¶¶ 10, 42-48.  Thus, Plaintiff and the Settlement Class Members have the exact same interest in recovering the statutory damages to which they are entitled under the PPPA.  As such, Plaintiff does not have any interest antagonistic to those of the proposed Settlement Class and his pursuit of this litigation should be clear evidence of that.  Moreover, Plaintiff was extensively involved in the litigation and settlement of this case.  *See* Declaration of Don Ruppel, Dkt. 103 at ¶¶ 3-11; Declaration of Joseph I. Marchese, Dkt. 102 ¶¶ 77-79.

Likewise, Class Counsel – Bursor & Fisher, P.A. – has extensive experience in litigating class actions of similar size, scope, and complexity to the instant action.  Marchese Decl. ¶¶ 34-35.  Class Counsel regularly engages in major complex litigation involving consumer privacy, including recent and ongoing PPPA cases, has the resources necessary to conduct litigation of this nature, and has frequently been appointed lead class counsel by courts throughout the country.  *Id.*; *see* Marchese Decl. Ex. B *(*Firm Resume of Bursor & Fisher, P.A.); *Ebin*, 297 F.R.D. at 566 ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims. … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five class action jury trials since 2008."); *TMBI* Hearing Tr. at 6:25-7:6 (appointing Bursor & Fisher, P.A. as class counsel); *In re Michaels Stores Pin Pad Litigation*, Case No. 11-cv-03350, Dkt. 22 (N.D. Ill. June 8, 2011) (appointing Bursor & Fisher class counsel to represent a putative nationwide class of consumers who made in-store purchases at Michaels using a debit or credit card and had their private financial information stolen as a result).

Accordingly, since Plaintiff and Class Counsel have demonstrated their commitment to

representing the Settlement Class and neither have interests antagonistic to the Settlement Class, the adequacy requirement is satisfied.

### E.     The Proposed Settlement Class Is Ascertainable

Though it does not appear in the text of Rule 23, courts in this Circuit have recognized an "implied requirement of ascertainability." *Ebin*, 297 F.R.D. at 566-67. "The ascertainability doctrine that governs in this Circuit requires only that a class be defined using objective criteria that establish a membership with definitive boundaries." *In re Petrobas Sec.*, 862 F.3d 250, 264 (2d Cir. 2017). Here, the Settlement Class is defined as "all Persons with a Michigan street address who between April 1, 2010 and October 31, 2016, purchased or had a subscription to a Consumer Reports Publication." Dkt. 99 ¶ 9. "[T]his class satisfies the ascertainability requirement as it is limited to Michigan residents who [purchased or] subscribed to the aforementioned publications between the prescribed time period." *TMBI* Hearing Tr. at 7:20-23.

### F.     The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

#### 1.     Common Questions Predominate

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, … predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d

13

124, 136 (2d Cir. 2001).  The essential inquiry is whether "liability can be determined on a classwide basis, even when there are some individualized damage issues."  *Id.* at 139.  Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied.  *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).  Notably, Rule 23(b)(3) calls only for "a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."  *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013).

In this case, Defendant allegedly engaged in a common course of conduct.  In these circumstances, courts find, particularly for purposes of settlement, that there is predominance of common questions over individual issues.  *See TMBI* Hearing Tr. at 8:13-21; *Moeller*, 5:16-cv-11367, Dkt. 42; *Kinder*, 2016 WL 454441, at *2; *Coulter-Owens*, 308 F.R.D. at 536; *see also In re Prudential Insur. Sales Practices Litig.*, 962 F. Supp. 450, 511-512 n.45 (D.N.J. 1997) ("*Prudential I*") (citing numerous other cases).

## 2.    A Class Action Is A Superior Mechanism For Adjudication

Rule 23(b)(3) also requires that the class action be "superior to other available methods for fair and efficient adjudication of the litigation."  Fed. R. Civ. P. 23(b)(3).[4]  "Courts have found that the superiority requirement is satisfied where[] [t]he potential class members are both significant in number and geographically dispersed[,] [and] [t]he interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions."  *Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280, at *13-14 (S.D.N.Y. Sept. 4, 2014).  "Class adjudication … is superior to individual adjudication because it will conserve judicial resources and is more efficient for class

---

[4] Whether the case would be manageable as a class action at trial is not of consequence in the context of a proposed settlement.  *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.").

members, particularly those who lack the resources to bring their claims individually." *Yuzary v. HSBC Bank USA, N.A.*, 2013 WL 5492998, at *4 (S.D.N.Y. Oct. 2, 2013).

Class treatment here will facilitate the favorable resolution of all Settlement Class Members' claims.  Given that there are approximately 582,212 Settlement Class Members, the class device is the most efficient and fair means of adjudicating these claims. "Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for Class Members, particularly those who lack the time and other resources to bring their claims individually." *Beckman v. Keybank, N.A.*, 2013 WL 1803736, at *3 (S.D.N.Y. Apr. 29, 2013); *Morris v. Affinity Health Plan*, 859 F. Supp. 2d 611, 617 (S.D.N.Y. 2012) (same).  Moreover, Plaintiff is unaware of any individual lawsuits that have been filed by Settlement Class Members arising from the same allegations.  Therefore, a class action is the superior method of adjudicating the Settlement Class Members' claims.

## II.        THE NOTICE PLAN COMPORTS WITH DUE PROCESS

Before final approval can be granted, due process and Rule 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  "Such notice to class members need only be reasonably calculated under the circumstances to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *12 (S.D.N.Y. Dec. 23, 2009).  Notice must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options. *See* Fed. R. Civ. P. 23(c)(2)(B).  At its core, all that notice must do is "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that

are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (citation omitted).

"It is clear that for due process to be satisfied, not every class member need receive actual notice, as long as counsel 'acted reasonably in selecting means likely to inform persons affected.'" *In re Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*, 271 F. App'x 41, 44 (2d Cir. 2008) (quoting *Weigner v. City of N.Y.*, 852 F.2d 646, 649 (2d Cir. 1988)).  The Federal Judicial Center notes that a notice plan is reasonable if it reaches at least 70% of the class.  *See* Fed. Judicial Ctr., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* 3 (2010).  The notice plan here easily meets these standards, as it provided direct notice via a postcard or email to 97% of the Settlement Class.  *See* Keough Decl. ¶ 15.

At preliminary approval, the Court approved the Parties' proposed Notice Plan, finding it met the requirements of Rule 23 and due process.  *See* Dkt. 99 ¶ 12.  The Plan has now been fully carried out by professional settlement administrator JND.  Pursuant to the Settlement, Defendant provided JND with a list of 583,106 available names, addresses and emails of potential Settlement Class Members.  *See* Keough Decl. ¶ 7.  After JND removed duplicates, the Class List contained 582,212 potential members.  *See id.* ¶ 8.  JND successfully delivered the Court-approved notice via email to 197,369 class members and via postcard to 368,167 class members.  *See id.* ¶ 15.  Accordingly, the Court-approved notice successfully reached 97% of the Settlement Class directly.  *See id.*[5]  These summary notices also directed Settlement Class Members to the Settlement Website, where they were able to submit claims online; access important court filings, including the Motion for Attorneys' Fees; and see deadlines and answers to frequently asked questions.  *See id.* ¶ 17.

---

[5] JND also notified the appropriate state and federal officials pursuant to CAFA.  *See* Keough Decl. ¶¶ 4-6.

Given the broad reach of the notice, and the comprehensive information provided, the requirements of due process and Rule 23 are easily met.

## III.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

Final approval of the Settlement is appropriate here because it is procedurally and substantively fair, adequate, and reasonable. *See* Fed. R. Civ. P. 23(e)(2). To determine whether to approve a settlement, "[c]ourts examine procedural and substantive fairness in light of the 'strong judicial policy in favor of settlement' of class action suits." *Tiro v. Public House Invs., LLC*, 2013 WL 4830949, at *5 (S.D.N.Y. Sept. 10, 2013). "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc.*, 396 F.3d at 116 (internal quotations omitted).

Importantly, courts and public policy considerations favor settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. "The compromise of complex litigation is encouraged by the courts and favored by public policy," and is particularly encouraged for the compromise of class actions. *Id.* at 117 (internal quotations omitted). If the settlement was achieved through arms'-length negotiations by experienced counsel, "[a]bsent fraud or collusion … [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

### A.   The Proposed Settlement Is Procedurally Fair

The circumstances surrounding the Settlement support the finding that the Settlement is

procedurally fair.  Courts examining the procedural fairness of a settlement do so "in light of the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves."  *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2009 WL 3077396, at *6 (E.D.N.Y. Sept. 25, 2009).

The Settlement was reached after two mediation sessions with well-respected JAMS mediators, including Judge Maas, and only after continued negotiations over the following weeks.  And the negotiations leading to the Settlement were conducted by highly qualified counsel who respectively sought to obtain the best possible result for their clients.  Moreover, the Settlement was reached in the midst of summary judgment briefing, after over two years of litigation, including complete Phase I discovery.  *See* Marchese Decl. ¶¶ 4-14, 19-22 (summary of litigation); *id.* ¶¶ 15-18, 23-25 (summary of negotiations).  In such situations courts, including the Second Circuit, adopt "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented for court approval." 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11:41 (4th ed. 2002); *see also McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) ("We have recognized a presumption of fairness, reasonableness, and adequacy as to the settlement where a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.  Such a presumption is consistent with the strong judicial policy in favor of settlements, particularly in the class action context.").

### B.     The Proposed Settlement Is Substantively Fair

In addition to being procedurally fair, the Settlement is also substantively fair, reasonable, and adequate.  "Courts in the Second Circuit evaluate the substantive fairness, adequacy, and reasonableness of a settlement according to the factors set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)."  *In re Vitamin C Antitrust Litig.*, 2012 WL

5289514, at *4 (E.D.N.Y. Oct. 23, 2012).  The nine *Grinnell* factors include:  "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."  *Id*. at *4 (quoting *Grinnell*, 495 F.2d at 463).  However, in reviewing and approving a settlement, "a court need not conclude that all of the *Grinnell* factors weigh in favor of a settlement," rather courts "should consider the totality of these factors in light of the particular circumstances."  *Id.*  Here, the *Grinnell* factors weigh in favor of final approval.

### 1.    Litigation Through Trial Would Be Complex, Costly, And Long (*Grinnell* Factor 1)

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff seeks to avoid significant expense and delay, and instead ensure recovery for the Class.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000).  Courts have consistently held that, unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results.  *TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), *aff'd,* 675 F.2d 456 (2d Cir. 1982).

This case is no exception.  As discussed above, the Parties have engaged in extensive document and deposition discovery, including third-party discovery.  Marchese Decl. ¶¶ 10-14. The next steps in the litigation would have been resolution by the Court of the Parties' motions for summary judgment, and then class certification, which would be costly and time-consuming

for the Parties and the Court, and create risk that a litigation class would not be certified and/or that the Settlement Class would recover nothing at all.  Consumer Reports has indicated that it would continue to assert numerous defenses on the merits, including that the PPPA does not prohibit the disclosure of the magazine information at issue at all.  More specifically, Plaintiff is aware that Defendant would continue to assert a number of defenses on the merits, including that the PPPA neither prohibits the disclosure of the magazine subscriptions information at issue (because the recipients of the disclosures are its agents), nor applies to Defendant at all because it is not engaged in the business of selling magazines "at retail," as is required to come under the scope of the statute.  Defendant will also continue to challenge Plaintiff's standing, and the constitutionality of the PPPA, as well as its applicability to magazines in particular and the magazine publishing industry in general.  Looking beyond trial, Plaintiff is also keenly aware of the fact that Defendant could appeal the merits of any adverse decision, and that in light of the statutory damages in play it would attempt to argue – in both the trial and appellate courts – for a reduction of damages based on due process concerns.  *See* Marchese Decl. ¶ 29.

The Settlement, on the other hand, permits a resolution of this action on terms that are fair, reasonable, and adequate to the Class.  This result will come years earlier than if the case proceeded to judgment through trial and/or appeals, and provides certainty, whereas litigation does not and could result in defeat for the Class on summary judgment, at trial, or on appeal.

Against that backdrop of uncertainty, the benefits of the Settlement are obvious and unmistakable:  it creates the largest expected class member recovery ever in a PPPA case and delivers immediate cash relief to the Settlement Class Members years earlier than if the case proceeded to judgment through trial and/or appeals.  Specifically, the $16.375 million settlement fund for the benefit of approximately 582,212 potential class members will provide an estimated $180 cash *pro rata* payment.  The reasonableness of the anticipated $180 *pro rata* payments

becomes all the more apparent when looking at the relief afforded in the typical privacy settlement, where classes tend to be enormous, but individual class members receive only *cy pres* relief without any individual payments. *See, e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 820-22 (9th Cir. 2012) (affirming $9.5 million settlement providing *cy pres* payment as sole monetary relief in case where statutory damages of up to $10,000 per claim were available in class of millions), *cert. denied* 134 U.S. 8 (Nov. 4, 2013); *In re Google Buzz Privacy Litig.*, 2011 WL 7460099, at *3-5 (N.D. Cal. June 2, 2011) (approving $8.5 settlement providing *cy pres* payment as sole monetary relief in case where statutory damages of up to $10,000 per claim were available in a class of millions).

Consequently, this *Grinnell* factor weighs in favor of final approval of the Settlement.

### 2.    The Reaction Of The Class Is Overwhelmingly Positive (*Grinnell* Factor 2)

With the second *Grinnell* factor, the Court judges "the reaction of the class to the settlement." *In re Vitamin C Antitrust Litig*, 2012 WL 5289514, at *4 (quoting *Grinnell*, 495 F.2d at 463). "It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 333 (E.D.N.Y. 2010) (internal quotation marks omitted). This "significant" factor weighs heavily in favor of final approval.

Here, the reaction of the Class Members to the Settlement has been overwhelmingly positive. Class Notice has been provided to the Settlement Class Members in accordance with the requirements of Rule 23(c)(2)(B) and the Preliminary Approval Order (Dkt. 99 ¶¶ 12-14), and direct notice reached 97% of the Settlement Class. *See* Marchese Decl. ¶ 32; Keough Decl. ¶¶ 4-15. As of October 12, 2018, 28,999 people have already filed valid claims, <u>zero</u> objected to the Settlement, and only 12 opted-out (a mere .002% of the Settlement Class). *See* Keough Decl. ¶¶ 18-20. This exceptional participation rate and lack of objections from the Settlement Class

leave no question that the class members view the Settlement favorably, which weighs heavily in favor of final approval and further supports the "presumption of fairness." *See, e.g., Hanlon v. Chrysler*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *4 (E.D.N.Y. 2012) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness.").

Consequently, this *Grinnell* factor weighs in favor of final approval of the Settlement.

### 3. Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3)

As discussed above, the Parties completed Phase I discovery, which included substantial document production, interrogatories, depositions, and third-party discovery. *See supra*; *see also* Marchese Decl. ¶¶ 10-14, 17. The documents included Plaintiff's magazine subscription records, records of transmissions of Plaintiff's customer information to multiple third-party companies, and Defendant's purported notices of the disclosures. Class Counsels' experience in similar matters, as well as the efforts made by counsel on both sides confirms that they are sufficiently well apprised of the facts of this action, and the strengths and weaknesses of their respective cases, to make an intelligent analysis of the proposed settlement.

 "The pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating." *Torres v. Gristede's Oper. Corp.*, 2010 WL 5507892, at *5 (S.D.N.Y. Dec. 21, 2010) (internal quotation omitted). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (internal quotation marks omitted). The

22

discovery conducted in this matter clearly traverses this hurdle.  This *Grinnell* factor thus also weighs in favor of final approval.

> ### 4.    The Continued Litigation Risks Related To Establishing Liability, Damages, And Maintaining A Class Action Through Trial Support Settlement (*Grinnell* Factors 4, 5, And 6)

"The fourth, fifth, and sixth *Grinnell* factors all relate to continued litigation risks," *i.e.*, the risks of establishing liability, damages, and maintaining the class action through trial.  *In re Vitamin C*, 2012 WL 5289514, at *5.  "'Litigation inherently involves risks.'"  *Willix v. Healthfirst, Inc.*, 2011 WL 7584862, at *4 (E.D.N.Y. Feb. 18, 2011) (quoting *In re PaineWebber*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997)).  "One purpose of a settlement is to avoid the uncertainty of a trial on the merits."  *Id*.

Although Plaintiff's case is strong, it is not without risk.  At the time of the Settlement, Defendant was briefing a motion for summary judgment, and had made it clear that it would vigorously contest the certification of a litigation class.  In weighing the risks of certifying a class and establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement."  *In re Austrian And German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (internal quotations omitted).

In the context of this litigation, Plaintiff and the Class face risks in overcoming Defendant's summary judgment motion and certifying a class.  Moreover, further litigation will only delay relief to the Class Members.  The Settlement alleviates these risks and provides a substantial benefit to the Class in a timely fashion.

The risk of maintaining the class status through trial is also present.  The Court has not yet certified the proposed Class for litigation purposes and the Parties anticipate that such a determination would be reached only after Phase I dispositive motions are briefed and decided, Phase II discovery is completed, and exhaustive class certification briefing is filed.  Defendant

would likely argue that individual questions preclude class certification.  Defendant would also likely argue that a class action is not a superior method to resolve Plaintiff's claims, and that a class trial would not be manageable.

Should the Court certify the class, Defendant would likely challenge certification through a Rule 23(f) application and subsequently move to decertify, forcing additional rounds of briefing.  Risk, expense, and delay permeate such a process.  The proposed Settlement eliminates this risk, expense, and delay as well.

Consequently, these *Grinnel* factors weigh in favor of final approval of the Settlement.

### 5.  Defendant Probably Could Not Withstand A Greater Judgment (*Grinnell* Factor 7)

Defendant probably could not withstand a much greater judgment.  Defendant is a nonprofit organization that has no owners, shareholders, or commercial investors, and has limited insurance coverage available.  *See* 10/20/17 Letter to Court, Dkt. 79 at 1 n.1.  Thus, this factor weighs in favor of final approval.

### 6.  The Settlement Amount Is Reasonable In Light Of The Possible Recovery And The Attendant Risks Of Litigation (*Grinnell* Factors 8 And 9)

The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (internal quotation omitted).  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought.  As the Second Circuit stated in *Grinnell*, "[t]here is no reason, at least in

theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery."  495 F.2d at 455 n.2.

Here, Class Counsel projects that each Class Member is expected to receive $180 in cash. In addition, Defendant has agreed to pay the costs of notice and administration as well as reasonable attorneys' fees, costs, and expenses for Class Counsel from the all-in fund established by the Settlement.  Agreement ¶¶ 1.33, 8.1.  Weighing the benefits of the Settlement against the risks associated with proceeding in litigation and in collecting on any judgment, the Settlement is more than reasonable.  This is especially true given Defendant's nonprofit status.  *See supra* at Argument § III.B.5.  Moreover, where – as here – a settlement assures immediate payment of substantial amounts to Class Members, and does not "sacrific[e] 'speculative payment of a hypothetically larger amount years down the road,'" the settlement is reasonable under this factor.  *See Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, *5 (S.D.N.Y. Mar. 24, 2008) (quoting *Teachers' Ret. Sys. Of Louisiana v. A.C.L.N. Ltd.*, 2004 WL 2997957, *5 (S.D.N.Y. May 14, 2004)).  Thus, these *Grinnell* factors also weigh in favor of final approval.

* * *

All of the *Grinnell* factors weigh in favor of approval, and the Settlement on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani,* 218 F.3d 132, 138-39 (2d Cir. 2000)).  The Court should therefore grant final approval.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant his Motion for Final Approval of the Settlement and enter the Final Approval Order in the form submitted herewith.

Dated:  October 17, 2018

Respectfully submitted,


By:     */s/ Joseph I. Marchese*
             Joseph I. Marchese

**BURSOR & FISHER, P.A.**
Scott A. Bursor
Joseph I. Marchese
Philip L. Fraietta
888 Seventh Avenue
New York, NY 10019
Telephone:  (646) 837-7150
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
             jmarchese@bursor.com
             pfraietta@bursor.com

Frederick J. Klorczyk III
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700
Email:  fklorczyk@bursor.com

*Class Counsel*